# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-2071

_____

Ellen Fjellestad,

       Appellant,

    v.

Pizza Hut of America, Inc.,

       Appellee.

\*   Appeal from the United States
\*   District Court for the
\*   District of South Dakota.

\*   AMENDED OPINION

_____

Submitted:  February 12, 1999

Filed:  August 25, 1999

_____

Before MURPHY, LAY, and JOHN R. GIBSON, Circuit Judges.

_____

LAY, Circuit Judge.

This court's opinion filed on June 16, 1999, is withdrawn and ordered vacated. This opinion, as amended, is now substituted and ordered filed in place of the original opinion.  With the filing of the amended opinion, the petition for rehearing is denied as moot without prejudice to the rights of the parties to file a petition for rehearing as to the amended opinion.

I.

Ellen Fjellestad appeals the grant of summary judgment in favor of her former employer, Pizza Hut of America, Inc., in a suit brought under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 et seq. (1994). On appeal, Fjellestad urges that the district court erred in holding (1) that she was not disabled within the meaning of the ADA, and (2) that even if she was disabled, she was not a qualified individual because she failed to articulate a reasonable accommodation that would make her qualified for the job. We reverse and remand.

Background

Fjellestad became unit manager of the Yankton, South Dakota, Pizza Hut restaurant in September of 1978. Her duties as the manager included ensuring customer satisfaction, supervising employees, maintaining a number of financial control measures, managing bank deposits, training and hiring employees, ensuring restaurant cleanliness, maintaining safety in the restaurant and managing general administration of the restaurant. A Pizza Hut unit manager is expected to work fifty hours per week, but may work fewer hours if they are able to accomplish their duties in less time.

Fjellestad had received district and national recognition for her managerial skills and was considered a capable and successful employee until she was seriously injured in an automobile accident on December 14, 1994. She was hospitalized for nearly a month after the accident and suffered a lacerated liver, severe chest injuries, blunt trauma to her right shoulder, and multiple broken ribs. During her hospitalization and recovery, Pizza Hut had Linda Folkers, a senior shift manager at the restaurant, serve as acting manager of the restaurant.

Fjellestad's doctors prohibited her from returning to work until April 28, 1995, when they released her to work for two hours every other day. After she fell in a

grocery store in early May, however, they again prohibited her from working. She returned to work again on June 16, 1995, but her doctors allowed her to work only four hours every other day for a total of twelve hours per week. Over the next six months, she slowly regained her ability to work. By December 29, 1995, her doctors said she was able to work thirty-five to forty hours per week, with no more than three consecutive days at work.

When Fjellestad returned to work in June 1995, Folkers continued to share some of the unit manager duties and functioned as a "co-manager" with Fjellestad until August of 1995. On August 24, 1995, when Fjellestad was released to work only twenty hours per week, she received the first of several memos from Rick Swanson, her area Pizza Hut supervisor, criticizing her for poor performance. Swanson continued to cite Fjellestad for poor performance as her work hours gradually increased.[1] Fjellestad filed a grievance with Pizza Hut on November 15, 1995, regarding Swanson's conduct and requested reasonable accommodation for her medical condition.

On December 12, 1995, a representative from Pizza Hut's human resources department called Fjellestad about the grievance and told her that she would be allowed to retain her position as unit manager because her doctor had released her to work a sufficient number of hours to perform her duties. However, she was placed on a sixty-day performance plan and Swanson evaluated her performance under the plan bi-weekly. On January 16, 1996, Fjellestad's doctor concluded that she had reached her maximum recovery. Her doctors determined that she experienced a permanent thirty

---

[1]He also met with her on October 23, 1995, and told her that once she had exhausted the leave time available to her under the Family Medical Leave Act she would be welcomed back to the full-time responsibility of running the restaurant, but that if she was unable to work the required 50 hours per week she would be demoted to a shift manager position at the restaurant.

percent impairment of her upper right extremity and would have "prominent weakness in her arms long term with probably some residual deficits for the rest of her life." Swanson eventually terminated Fjellestad on February 8, 1996, (day 47 or 48 of the plan), for allegedly failing to make adequate progress in meeting the targets set forth in the performance plan. Linda Folkers was then named the unit manager of the restaurant. Following her termination, Fjellestad filed two additional grievances with Pizza Hut requesting reasonable accommodation. After they failed to take action, she filed this lawsuit.

The ADA prohibits employers from discriminating "against a qualified individual with a disability because of the disability of such individual." 42 U.S.C. § 12112(a). To establish a claim under the ADA, a plaintiff must show (1) that she is disabled within the meaning of the Act; (2) that she is qualified to perform the essential functions of the job either with or without accommodation; and (3) that she has suffered adverse employment action because of the disability. *Benson v. Northwest Airlines, Inc.*, 62 F.3d 1108, 1112 (8th Cir. 1995). In granting summary judgment, the district court held that Fjellestad failed to establish a claim because she was not disabled under the ADA, and even if she were, she was not qualified to perform the essential functions of the job with or without reasonable accommodation. This appeal followed.

Disability Under the ADA

The ADA defines disability as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). Major life activities include caring for one's self, performing manual tasks, walking, seeing, hearing, breathing, learning and working. 29 C.F.R. § 1630.2(i) (1998). Sitting, standing, lifting and reaching also are considered major life activities. *Helfter v. United Parcel Serv., Inc.*, 115 F.3d 613, 616 (8th Cir. 1997). An impairment is "substantially limiting" if it renders an individual unable to perform a

-4-

major life activity that the average person in the general population can perform, or if it significantly restricts the condition, manner, or duration under which an individual can perform a particular major life activity as compared to an average person in the general population. 29 C.F.R. § 1630.2(j)(1)(i)-(ii). The following factors are considered in determining whether a person is substantially limited in a major life activity: (1) the nature and severity of the impairment; (2) its duration or anticipated duration; and (3) its long-term impact. 29 C.F.R. § 1630.2(j)(2)(i)-(iii). Additionally, the determination of whether an individual is substantially limited in a major life activity must be made on a case by case basis. *Doane v. City of Omaha*, 115 F.3d 624, 627 (8th Cir. 1997), *cert. denied*, 118 S. Ct. 693 (1998).

Fjellestad contends that she is substantially limited in the major life activities of sleeping, bathing, sitting and working. The district court rejected each of her contentions. We find that a triable issue of fact exists regarding whether Fjellestad was substantially limited in the major life activity of working.

A person is substantially limited in working if she is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities." *Id.* The factors to be considered include: the number and type of jobs from which the impaired individual is disqualified; the geographical area to which the individual has reasonable access; and the individual's job training, experience, and expectations. *Helfter,* 115 F.3d at 617; 29 C.F.R. § 1630.2(j)(3)(ii). In *Webb v. Garelick Mfg. Co.*, 94 F.3d 484, 488 (8th Cir. 1996), this court stated, "the ADA is concerned with preventing substantial personal hardship in the form of significant reduction in a person's real work opportunities. A court must ask 'whether the particular impairment constitutes for the particular person a significant barrier to employment,'" and the person's expertise, background, and job expectations are relevant in defining the class of jobs used to determine whether the person is disabled. *Id.* at 488 (citations omitted). Finding that an individual is substantially limited in his or her ability to work requires

a showing that his or her overall employment opportunities are limited. *Miller v. City of Springfield*, 146 F.3d 612, 614 (8th Cir. 1998).

Fjellestad has created a factual dispute about whether her overall employment opportunities are limited. Fjellestad lives in a rural town in South Dakota. She worked nearly twenty years for Pizza Hut in the restaurant management business and adequately performed her duties prior to her accident. Her entire work training, experience, and expectations lie in restaurant management. After her accident and lengthy recovery, however, she is no longer able to work the long hours or perform her duties to the level of success she previously achieved. Furthermore, Rick Ostrander, an occupational specialist, reported that there were 28,000 available jobs in South Dakota that fit her vocational profile, but that she is eligible for only about 1,300 of these jobs due to her functional limitations. He found that this represented a 91 percent reduction in employability, and a 95 percent reduction in labor market access based on actual positions available. Significantly, Fjellestad has been unable to obtain employment following her termination.

It is undisputed that Fjellestad's doctors have given her a permanent thirty percent impairment of her upper right extremity, and have imposed restrictions that limit her to working 35-40 hours per week with no more than three consecutive days of work.[2] These medical restrictions create a triable issue as to whether Fjellestad's impairments have significantly restricted the condition, manner, or duration in which

---

[2]The facts in this case are thus distinguishable from those in *Berg v. Norand Corp.*, 169 F.3d 1140 (8th Cir. 1999), in which this court recently held that a plaintiff who was limited to working 40-50 hours per week was not substantially limited in the major life activity of working. The diabetic plaintiff in *Berg* could work 40-50 hours per week, more than a full-time work week, and after being terminated, was never unemployed, started her own tax and accounting practice, and became the chief financial officer of a construction company. *Id.* at 1145.

she can work as compared to an average person in the general population. *See* 29 C.F.R. § 1630.2(j)(1)(i)-(ii).[3]

Qualified Individual/Reasonable Accommodation

The next question is whether Fjellestad was qualified to perform the essential functions of her job with or without reasonable accommodation. Fjellestad essentially concedes that she could not perform the essential functions of the unit manager position without reasonable accommodation. The district court found that she was not qualified under the ADA because she could not perform the work of a unit manager with or without accommodation. Under the circumstances, we must consider whether Pizza Hut failed to provide reasonable accommodations to Fjellestad that would have allowed her to perform the essential functions of the position. Fjellestad is only required to make a facial showing that reasonable accommodation is possible. *Benson*, 62 F.3d at 1112. At that point, the burden of production shifts to Pizza Hut to show that it is unable to accommodate Fjellestad. *Id.*

Fjellestad argues that two reasonable accommodations were possible. First, Fjellestad contends that Pizza Hut could have accommodated her by creating a permanent co-manager position in which she shared unit managerial responsibilities with a co-manager, similar to the way in which she had earlier shared managerial responsibilities with Linda Folkers. Second, Fjellestad contends that Pizza Hut could have accommodated her by assigning her to the shift manager position that became vacant when Linda Folkers was promoted to unit manager. The district court rejected both of these suggested accommodations. The district court found the co-manager

---

[3]Plaintiff also argues that Pizza Hut regarded her as disabled. Because we find that a triable issue of material fact exists as to whether Fjellestad was actually disabled under the first prong of the ADA's definition of disability, we need not address her "regarded as" claimed.

accommodation to be unreasonable because the ADA does not require an employer to create a new position to accommodate a disabled employee or to shift the essential functions of the position to other employees. *See Benson*, 62 F.3d at 1114-15; 29 C.F.R. § 1630, App. § 1630.2(o).

We agree that requiring Pizza Hut to create a co-manager position is not a reasonable accommodation. *Benson*, 62 F.3d at 1112. While job restructuring is a possible accommodation under the ADA, this court has held that an employer need not reallocate or eliminate the essential functions of a job to accommodate a disabled employee. *Id.* Pizza Hut is not obligated to hire additional employees or reassign existing workers to assist Fjellestad in her essential duties. *See Moritz v. Frontier Airlines, Inc.*, 147 F.3d 784, 788 (8th Cir. 1998). Neither is Pizza Hut required to create a new position or to create a permanent position out of a temporary one as an accommodation. *See Benson*, 62 F.3d at 1114.

Fjellestad has, however, made a facial showing and created a genuine issue of material fact as to whether Pizza Hut could have reassigned her to the shift manager position that became vacant when it promoted Linda Folkers to unit manager. Reassignment to a vacant position is a possible accommodation under the ADA. *See* 42 U.S.C. § 12111(9)(B);[4] *Benson*, 62 F.3d at 1114; 29 C.F.R. § 1630.2(o)(2)(ii). The fact that Fjellestad competently performed her duties as a unit manager for close to twenty years creates a fact question as to whether she was qualified for the shift manager position and whether moving her to this position would be a reasonable accommodation. After Fjellestad made this facial showing that reasonable

---

[4]Reasonable accommodations may include: "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations . . . ." 42 U.S.C. § 12111(9)(B).

accommodation was possible, the district court should then have shifted the burden to Pizza Hut to prove that it was unable to accommodate Fjellestad through reassignment to this position. *See Benson*, 62 F.3d at 1115.

The district court did not shift the burden, and Pizza Hut has offered no evidence that Fjellestad was unable to perform this position. In fact, Pizza Hut even mentioned assigning Fjellestad to shift manager in its internal correspondence and in its January 4, 1996 letter to Fjellestad. Pizza Hut now argues that Fjellestad could not perform the shift manager position because it is a full-time job. However, Linda Folkers testified that she worked 35-40 hours per week as a shift manager. Fjellestad's doctors had released her to work this same number of hours at the time she was terminated, but she was limited to no more than three consecutive days of work. Pizza Hut has failed to show that the shift manager position required more than three consecutive days of work. Although this accommodation may prove unreasonable once the essential requirements of the position are developed, summary judgment is inappropriate without such development. *See id.*

The district court summarily dismissed this suggested accommodation because Fjellestad rejected this accommodation in her November 15, 1995 letter in which she generally stated: "Demotion or termination would not be consistent with employer reasonable accommodation duties." We find the district court's analysis ignored Pizza Hut's obligation under the ADA to help determine the appropriate reasonable accommodation.

An employer commits unlawful discrimination under the ADA if the employer does "not mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of [the employer]." 42 U.S.C. § 12112(b)(5)(A). The ADA's regulations state that: "To determine the

appropriate reasonable accommodation it may be <u>necessary</u> for the [employer] to initiate an informal, interactive process with the [employee] with a disability in need of the accommodation. This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." 29 C.F.R. § 1630.2(o)(3). (emphasis added). The EEOC's interpretive guidelines also state that: "Once a qualified individual with a disability has requested provision of a reasonable accommodation, the employer <u>must</u> make a reasonable effort to determine the appropriate accommodation. The appropriate reasonable accommodation is best determined through a flexible, interactive process that involves both the employer and the [employee] with a disability." 29 C.F.R. § 1630, App. § 1630.9. (emphasis added).

Other circuits have considered these regulations and interpretive guidelines and have written differing interpretations of them. Some circuits have concluded that both parties have a duty to act in good faith and assist in the search for appropriate reasonable accommodations. *See Taylor v. Phoenixville Sch. Dist.*, 174 F.3d 142, 157 (3d Cir. 1999); *Beck v. University of Wis. Bd. of Regents*, 75 F.3d 1130, 1135 (7th Cir. 1996); *Taylor v. Principal Fin. Group, Inc.*, 93 F.3d 155, 165 (5th Cir. 1996). Other circuits have concluded that no such obligation exists and that an employer cannot be held independently liable under the ADA for simply failing to engage in an interactive process to determine reasonable accommodations. *See Barnett v. U.S. Air, Inc.*, 157 F.3d 744, 752-53 (9th Cir. 1998); *Willis v. Conopco, Inc.*, 108 F.3d 282, 285 (11th Cir. 1997); *White v. York Int'l Corp.*, 45 F.3d 357, 363 (10th Cir. 1995).

We tend to agree with those courts that hold that there is no per se liability under the ADA if an employer fails to engage in an interactive process. However, we feel the interpretive guidelines set forth when it is "necessary" for an employer to initiate an informal interactive process with an employee in need of accommodation. The guidelines set forth the predicate requirement that when the disabled individual requests accommodation, it becomes necessary to initiate the interactive process. Although an employer will not be held liable under the ADA for failing to engage in an interactive

process if no reasonable accommodation was possible, we find that for purposes of summary judgment, the failure of an employer to engage in an interactive process to determine whether reasonable accommodations are possible is prima facie evidence that the employer may be acting in bad faith. Under these circumstances, we feel a factual question exists as to whether the employer has attempted to provide reasonable accommodation as required by the ADA.

In *Taylor v. Phoenixville Sch. Dist.*, the Third Circuit held that once the employer knows of an employee's disability and the employee or the employee's representative has requested accommodation, the employer's obligation to participate in the interactive process has been triggered. *Taylor*, 174 F.3d at 158-59. The Third Circuit held that a disabled employee must demonstrate the following factors to show that an employer failed to participate in the interactive process: "1) the employer knew about the employee's disability; 2) the employee requested accommodations or assistance for his or her disability; 3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and 4) the employee could have been reasonably accommodated but for the employer's lack of good faith." *Id.* at 165 (citations omitted).

Applying this analysis in the present case, we find that Fjellestad has created a genuine issue of fact about whether Pizza Hut failed to participate in the interactive process. First, Pizza Hut had more than enough information to put it on notice that Fjellestad might have a disability. Pizza Hut knew that she was involved in a car accident in which she suffered serious physical injuries that required hospitalization for nearly a month. Pizza Hut had several notes on record from her physicians that contained various work restrictions, and they knew that at full recovery she was diagnosed with a permanent thirty percent impairment of her upper right extremity. They also knew that she was not performing her job to the level she had been performing in the nearly twenty years preceding her accident.

Second, Fjellestad specifically requested reasonable accommodation. In response to the criticism and warnings she had received from Swanson, she submitted her November 15, 1995 grievance letter to Pizza Hut in which she wrote, "I request that I be reasonably accommodated."[5] Once Fjellestad made this request, Pizza Hut was required to initiate an interactive process with Fjellestad to determine the appropriate reasonable accommodation.

Third, viewing the evidence in the light most favorable to Fjellestad, we believe a dispute exists whether Pizza Hut made a good faith effort to engage in the interactive process, and that a reasonable jury could conclude that Pizza Hut has not met its burden to engage in an interactive process to determine whether an appropriate reasonable accommodation existed.[6] Prior to her accident, Fjellestad performed her job competently for nearly twenty years. After her accident, however, Swanson documented her deficiencies and repeatedly warned her about declining performance. Fjellestad requested accommodation. Instead, Fjellestad has presented evidence that Pizza Hut placed her on a sixty-day performance plan, terminated her on day forty-seven or forty-eight of the plan when she failed to meet the performance expectations outlined in the plan, and never offered her reassignment or discussed whether other accommodations were available. Although her grievance letter generally rejected demotion as a possible reasonable accommodation, Pizza Hut had never previously

_____

[5]Although in this case Fjellestad made a written request and used the relevant words of "reasonable accommodation," as the Third Circuit stated in *Taylor*, an employee is not required to request accommodation in writing, or to use the magic words of "reasonable accommodation." *See Taylor*, 174 F.3d at 158. The notice must merely make it clear to the employer that the employee wants assistance for his or her disability. *Id.* at 158-59.

[6]That is not to say, however, that Pizza Hut did nothing to accommodate Fjellestad's recovery. Indeed, Pizza Hut held her position open during her hospitalization, had another employee perform her duties during her absence and help her after she returned, and scheduled her within her doctor's hourly restrictions.

discussed accommodation options with Fjellestad or explained that assignment to a shift manager might be the only possible accommodation. It is undisputed that this position was never offered to Fjellestad. Her perception that demotion was an unacceptable accommodation did not relieve Pizza Hut from the obligation of discussing with her the possible accommodations that were appropriate and available.[7]

Finally, assuming Pizza Hut failed to act in good faith by engaging in such a process, Pizza Hut has presented no evidence that it would have been unable to accommodate Fjellestad by assigning her to the vacant shift manager position. Pizza Hut and the district court emphasize that Fjellestad did not specifically request any of the accommodations that she now suggests are reasonable. As the Third Circuit recognized in *Taylor*, however, this fact is not fatal to Fjellestad's claim:

> The interactive process, as its name implies, requires the employer to take some initiative. . . . The interactive process would have little meaning if it was interpreted to allow employers, in the face of a request for accommodation, simply to sit back passively, offer nothing, and then, in post-termination litigation, try to knock down every specific accommodation as too burdensome. That's not the proactive process intended: it does not help avoid litigation by bringing the parties to a negotiated settlement, and it unfairly exploits the employee's comparative lack of information about what accommodations the employer might allow.

---

[7]The Third Circuit recognized that employers can show their good faith attempt to find a reasonable accommodation in a many ways, such as meeting with the employee who requests accommodation, requesting information about the condition and what limitations the employee has, asking the employee what he or she specifically wants, showing some sign of having considered the employee's request, and offering and discussing available alternatives when the employee's request is too burdensome. *Taylor*, 174 F.3d at 162.

*Taylor*, 174 F.3d at 161 (footnote omitted).  An employer who has received notice that reasonable accommodation is requested "cannot escape its duty to engage in the interactive process simply because the employee did not come forward with a reasonable accommodation that would prevail in litigation." *Id.* at 162.

In sum, we find that summary judgment is typically precluded when there is a genuine dispute as to whether the employer acted in good faith and engaged in the interactive process of seeking reasonable accommodations. In *Taylor,* the court stated:

> [B]ecause employers have a duty to help the disabled employee devise accommodations, an employer who acts in bad faith in the interactive process will be liable if the jury can reasonably conclude that the employee would have been able to perform the job with accommodations. In making that determination, the jury is entitled to bear in mind that had the employer participated in good faith, there may have been other, unmentioned possible accommodations. . . .
>
> When an employee has evidence that the employer did not act in good faith in the interactive process, however, we will not readily decide on summary judgment that accommodation was not possible and the employer's bad faith could have no effect.  To assume that accommodation would fail regardless of the employer's bad faith would effectively eliminate the requirement that employers must participate in the interactive process.

*Id.* at 163.

We must emphasize, however, that by requiring the employer to engage in an interactive process, we do not hold that any particular accommodation must be made by the employer.  The employee still carries the burden of showing that a particular accommodation rejected by the employer would have made the employee qualified to perform the essential functions of the job. *See id.* at 162.  "All the interactive process requires is that employers make a goodfaith effort to seek accommodations." *Id.*

-14-

II.

As stated earlier in this opinion, this court's opinion issued on June 16, 1999, is now withdrawn and this amended opinion is substituted in its place. This amended opinion is necessitated by two recent Supreme Court decisions which were issued subsequent to the filing of our first opinion. *See Sutton v. United Air Lines, Inc.*, 119 S. Ct. 2139 (1999); *Murphy v. United Parcel Serv., Inc.*, 119 S. Ct. 2133 (1999).

*Disability*

In supplemental briefing, Pizza Hut argues that *Sutton's* and *Murphy's* discussion of the "major life activity" of working demonstrates that Fjellestad is not substantially limited in her ability to work.[8] We disagree.

Pizza Hut focuses on the following language set forth in *Sutton*:

> To be substantially limited in the major life activity of working, then, one must be precluded from more than one type of job, a specialized job, or a particular job of choice. If jobs utilizing an individual's skills (but perhaps not his or her unique talents) are available, one is not precluded from a substantial class of jobs. Similarly, if a host of different types of jobs are available, one is not precluded from a broad range of jobs.

---

[8]Pizza Hut echoes the Supreme Court's "conceptual difficulty" in defining a major life activity to include working. However, Pizza Hut never challenged the validity or reasonableness of the regulation which defines the term major life activity to include working in the trial court or on appeal. Thus, following the Supreme Court's approach in *Sutton*, we likewise assume the reasonableness and validity of the regulation for purposes of our discussion.

*Sutton*, 119 S. Ct. at 2151.

In light of this language, Pizza Hut contends that Fjellestad cannot be substantially limited in her ability to work unless she is completely unable to perform *any* job. Thus, notwithstanding the reports of an occupational specialist that Fjellestad experienced a 91 percent reduction in employability and a 95 percent reduction in labor market access, Pizza Hut urges that because Fjellestad was *not totally* disabled, she failed to meet the statutory criteria of disability under the ADA. However, we find Pizza Hut's interpretation of *Sutton* would create an unintended and an absurd result.

First, Pizza Hut's interpretation ignores the Act's use of the words "substantially limited." We again emphasize our earlier observation made in *Webb v. Garelick Mfg. Co.*, 94 F.3d 484, 488 (8th Cir. 1996), that "the ADA is concerned with preventing substantial personal hardship in the form of *significant* reduction in a person's real work opportunities. A court must ask 'whether the particular impairment constitutes for the particular person a *significant* barrier to employment.'" *Id.* at 488 (citations omitted) (emphasis added). The person's expertise, background, and job expectations are relevant in defining the class of jobs used to determine whether the person is disabled. *See id.* Finding that an individual is *substantially* limited in his or her ability to work requires a showing that his or her overall employment opportunities are *limited*. *Miller v. City of Springfield*, 146 F.3d 612, 614 (8th Cir. 1998). Thus, the Act does not require a showing that absolutely no employment opportunities exist.

Second, Pizza Hut's interpretation that a plaintiff must be totally disabled to qualify under the ADA would render the Act meaningless and unable to provide any remedy at all. Under the ADA, a disabled person must be qualified to perform the essential functions required of the job, with or without reasonable accommodation. Yet, under Pizza Hut's argument, if an individual can perform the essential functions of the job with accommodation, then that person is not disabled. This interpretation is

-16-

circular and would defeat *any* person's ability to recover.  The ADA is designed to prevent discrimination of a disabled person who can perform the essential functions of the job with or without reasonable accommodation.  The ADA is not legislation to benefit those who are *totally disabled* and unable to perform *any* job.

The Supreme Court recently recognized this distinction in *Cleveland v. Policy Management Sys. Corp.*, 119 S. Ct. 1597 (1999).  In *Cleveland*, the Court held that the plaintiff had to explain the inconsistency between his claim for total disability under the Social Security Act and his claim brought under the ADA.  *Id.*  The argument was made that if an individual is totally disabled under the Social Security Act, he or she cannot recover under the ADA because he or she would be  unable to perform the essential functions of the job.  *Id.* at 1601.  The Supreme Court rejected this either/or analysis.  The Court pointed out that a person has several possibilities available to recover under the ADA and still be able to recover under the Social Security Act.  *Id.* at 1602.  Therefore, the Court held that a claimant is not legally estopped from making both claims.  *Id.* at 1597.  As Justice Breyer explained, such a result would ignore that a plaintiff who was disabled under the Social Security Act could nonetheless still "perform the essential functions" of her job, with "reasonable accommodation" under the ADA.  *Id.* at 1602.  In addition, directly contrary to Pizza Hut's contention in the present case, the Court stated:  "The Act defines a 'qualified individual with a disability' as a disabled person 'who . . . can perform the essential functions' of her job, *including those who can do so only 'with . . . reasonable accommodation.'"  Id.* at 1601 (quoting 42 U.S.C. § 12111(8))(emphasis added).

Thus, Pizza Hut's argument that Fjellestad is not substantially limited in her ability to work because we find that a factual dispute exists about whether she can perform the position of shift manager is untenable.  Furthermore, our decision is consistent with the recent directives from the Supreme Court on this issue.  In determining that Fjellestad is substantially limited in her ability to work, we focus on Fjellestad's inability to perform either a class of jobs or a broad range of jobs, and we

consider other factors recognized by the Court in *Murphy* and *Sutton*, such as "the number and types of jobs utilizing similar training, knowledge, skills or abilities, within [the] geographical area [reasonably accessible to the individual], from which the individual is also disqualified." *Murphy*, 119 S. Ct. at 2138 (citation and internal quotations omitted).

*Reasonable Accommodation*

In its supplemental briefing, Pizza Hut also contends that we incorrectly decided the reasonable accommodation issue. First, Pizza Hut maintains that Fjellestad did not meet her burden of demonstrating that a reasonable accommodation was possible. However, we find that Fjellestad did meet her burden and created a genuine issue of material fact as to whether Pizza Hut could have reassigned her to the vacant shift manager position. Thus, our decision on this issue does not improperly relieve Fjellestad of her burden to prove that reasonable accommodation was possible.

Second, Pizza Hut contends that our decision in this case conflicts with *Mole v. Buckhorn Rubber Prods., Inc.*, 165 F.3d 1212 (8th Cir. 1999), *petition for cert. filed*, 60 U.S.L.W. 3773 (U.S. June 11, 1999) (No. 98-1990), in which this court held that the plaintiff failed to present sufficient evidence that she could meet her employer's legitimate expectations with or without accommodation. However, the major difference between the present case and *Mole* is that the majority opinion in *Mole* found that the plaintiff never requested additional reasonable accommodation from her employer. *Id.* at 1217-18. Here, however, Fjellestad did request that she be "reasonably accommodated," using those specific words, both before and after her termination. Furthermore, the majority in *Mole* found there was "no evidence Buckhorn failed to make a good faith reasonable effort to help Mole determine if other accommodations might be needed." *Id.* at 1218. In so doing, the majority in *Mole* cited *Beck v. University of Wis. Bd. of Regents*, 75 F.3d 1130, 1135 (7th Cir. 1996), which concluded that the employer has some responsibility in determining the

necessary accommodations through an interactive process and stated that "courts should look for signs of failure to participate in good faith or failure by one of the parties to make reasonable efforts to help the other party determine what specific accommodations are necessary. . . . A party that fails to communicate, by way of initiation or response, may also be acting in bad faith."  Unlike the situation in *Mole*, in the present case we find that a genuine issue of material fact exists as to whether Pizza Hut made a good faith reasonable effort to determine whether appropriate reasonable accommodations existed.  We base our conclusion on evidence that Pizza Hut placed Fjellestad on a sixty-day performance plan after she requested accommodation, terminated her before the sixtieth day, and never offered her reassignment or discussed whether other accommodations were available.

Pizza Hut also emphasizes that Fjellestad expressly stated that she did not consider demotion to be a reasonable accommodation.  However, her statements came at a time when she sought to retain her job as a unit manager with accommodation from Pizza Hut.  Furthermore, following Fjellestad's initial statement, Pizza Hut continued to consider reassignment to the shift manager position as a possibility in its January 1996 letter to Fjellestad.[9]  Yet, following Fjellestad's request for accommodation, Pizza Hut never offered Fjellestad reassignment to another position or engaged in any

---

[9]At the very least, however, Fjellestad's seemingly contradictory positions with regard to reassignment to the shift manager position creates a question of fact for a jury. In light of Fjellestad's present position that she should have been offered the vacant shift manager position, she must adequately explain to the jury her earlier statement that demotion was not a reasonable accommodation.  This situation is similar to that considered by the Supreme Court in *Cleveland v. Policy Management Sys. Corp.*, 119 S. Ct. 1597, 1603-04 (1999), in which the Court found that because the plaintiff proffered a sufficient explanation for her contradictory positions, she survived summary judgment by creating a fact question that required further exploration in the trial court to present or contest the explanations.

discussion to determine whether reassignment or any other appropriate accommodations existed.

*Burden of Proof*

Finally, Pizza Hut argues that the panel applied the wrong burden of proof and ignored the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). However, the correct standard as to burden of proof was not an issue in our first opinion. We addressed the issues presented by Fjellestad on appeal and the only two issues discussed by the district court when it granted summary judgment in Pizza Hut's favor: (1) whether Fjellestad created a factual dispute about whether she was disabled within the meaning of the ADA; and (2) whether Fjellestad created a factual dispute about whether reasonable accommodation was possible. After considering these issues, we find that Fjellestad met her burden to establish a prima facie case of disability and made a request for reasonable accommodation. The burden of persuasion remained on Fjellestad at all times. We conclude that the evidence, along with the need of the employer to enter into an interactive process to determine the possibility of reasonable accommodations, present sufficient facts to create genuine issues of material fact for a jury to resolve.

## III.

We, therefore, reverse the district court's holding as a matter of law that Fjellestad was not disabled within the meaning of the ADA and not qualified to perform the essential functions of the position with reasonable accommodation. We find that genuine issues of material fact remain on these issues that preclude summary judgment.

REVERSED.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.