LAY, Circuit Judge,
dissenting.
The impact of today’s decision is that an employer in an ADA case, at least in this circuit, will always win on summary judgment by simply asserting that a plaintiff-employee cannot be reasonably accommodated. Regardless of a plaintiffs request for reasonable accommodation, a mere denial by the employer will always foreclose a plaintiffs disability claim and deny a plaintiff a jury trial and an opportunity to present a factual issue as to whether the accommodation requested is feasible.
There are several flaws in the majority’s holding. First and foremost, such a ruling completely overlooks the basic principles which govern a motion for summary judgment. It ignores the fundamental rule that summary judgment may not be granted where the record presents a genuine dispute over a material fact. Second, it fails to give recognition to the legal maxim that in order to grant summary judgment all the evidence must point one way and be susceptible of no reasonable inferences sustaining the position of the non-moving party. The obvious corollary to this principle is that a motion for summary judgment requires the facts to be viewed in the light most favorable to the plaintiff by affording a plaintiff the benefit of all factual inferences. These settled principles of law need no citation.
According to the majority, there are no genuine issues of material fact as to whether Heaser can be reasonably accommodated in order to allow her to continue working. In all due respect, this overlooks the factual record. Heaser’s basic request of accommodation is that she be allowed to carry on her job at home, in an atmosphere free from carbonless paper, printed literature, copiers, and polluted air. Toro asserts that these requested accommodations are not feasible for various reasons, including the fact that Heaser’s job cannot be done from home or without carbonless paper. The majority opinion, however, appears to ignore the evidence presented by Heaser while giving sole credibility to the evidence presented by Toro. At the very *835 least, Heaser’s evidence demonstrates, providing all reasonable inferences to be drawn from it, factual issues as to whether her requested accommodations are feasible and therefore reasonable.
A closer look at the record shows that a thorough discussion never took place as to whether it was feasible for Heaser to work from home or without carbonless paper. In December 1996, Toro denied Heaser’s short-term disability benefits. Subsequently, Heaser sent Toro a letter formally requesting work accommodations in her home. In the letter, Heaser explained that she was aware of other employees who accessed Toro’s computer system from home. Thus, Heaser requested a phone line, phone, computer, and fax machine to use from her home in order to fulfill her position as Consumer Marketing Services Coordinator.
On January 28, 1997, Toro wrote to Heaser and denied her requested accommodation. Instead, Toro offered Heaser the alternative of returning to the Lyndale facility, but in a different location. Toro indicated that this was the only alternative available to Heaser and that if she did not accept this offer by February 8, 1997, Toro would conclude that she had voluntarily resigned.
Heaser responded to Toro’s letter on February 3, 1997. In her letter, Heaser explained that the temporary location that Toro proposed had air quality problems. Heaser based this assertion on the health problems of another Toro employee who was located in the same area. Heaser then outlined a series of proposed accommodations which would enable her to return to work at Toro’s Lyndale facility. These requests included removing an air freshener from one of the women’s bathrooms, creation of a fragrance free, chemical free area, using non-toxic cleaning formulas, installing an air purifier, and the assignment of a resource person to whom she could bring her concerns about the environment. . Heaser proposed a thirty-day test period-to try the accommodations.
On March 6,1997,- Toro met with Heaser to discuss her proposed accommodations. Toro indicated that it would be willing to remove the air freshener from one of the bathrooms and that it would talk to the cleaning crew about using alternative cleaning solutions.[3] Heaser indicated in the meeting that she was willing to return to Toro and “give it a try.” Before Heaser returned to work, however, Toro requested a letter from Heaser’s doctor stating that she was fit to return to work without further risk of health problems.
Heaser’s doctor sent Toro a letter explaining that unless Heaser could avoid “plastics, carbonless paper, copiers and their fumes, exhaust fumes, other personnel who may be wearing perfumes, colognes, etc., it [would be] very difficult [for her] to succeed in gainful employment.” (Letter from Dole, M.D. to Toro at 2.)
On March 13, 1997, Toro sent Heaser a letter stating that it did not have a position consistent with her health requirements and that the accommodations she sought were too broad and far-reaching. Toro further explained that it was left with no alternative but to terminate her employment. Thus, the interactive process between Heaser and Toro was never completed because Toro terminated Heaser before she could return to work.
In support of her request to work from home, Heaser presented evidence that she had previously worked from home over a *836 period of three months. During this time, Heaser worked at the Toro facility when she was able and worked from home when she was too sick to remain at work. Heaser believes she adequately performed her job from home, and there is no evidence in the record to indicate that Toro had a problem with Heaser’s performance during this time. This evidence, however, appears to have been overlooked in the majority’s opinion.
Further, Heaser presented evidence showing that other Toro employees have been allowed to work from home. While these employees had different job functions than Heaser, they were similarly situated because of their need to remotely access the computer system. Nonetheless, the majority ignores Heaser’s claim that Toro can provide her with adequate access to its computer system, instead labeling it “conjecture.” Instead, the majority relies on an affidavit by an analyst from Toro’s information technology division to conclude that Heaser could not remotely access the software needed for her job. According to the majority's analysis, Heaser could not work from home because the computer software necessary for her position, a program called Dataflex, could not be remotely accessed.
There are two problems with the majority’s analysis. First, the evidence must be viewed in the light most favorable to Heaser. Why is it then that Heaser’s assertion about accessing the computer system from .home is simply “conjecture,” yet Toro’s claim that the computer system cannot be accessed remotely is considered undisputed fact?
Second, the affidavit the majority relies on does not say that the Dataflex software is necessary for Heaser’s position. It says that Heaser was using the Dataflex software at the time she stopped working.[4] There appears to be nothing in the record that defines the use of Dataflex software as an essential function of Heaser’s job. It seems possible, therefore, that Heaser could have done her job using other software programs that could remotely access the Toro computer system. In fact, in the affidavit, Toro’s analyst explains that other software programs have been used by employees to remotely access Toro’s computer system.[5] The evidence also indicates that electronic documents could have been exchanged between Heaser and Toro via a courier system. None of this evidence appears to have been considered by the majority.
With respect to Heaser’s request to perform her job without carbonless paper, the majority feels that Heaser failed to show that avoiding carbonless paper is a reasonable accommodation. Once again the majority places great weight on Toro’s evidence while ignoring the evidence presented by Heaser. It is important to note that using carbonless paper is not one of the functions of Heaser’s job,[6] it is simply *837 a tool that Heaser typically used to perform one of the functions of her job— ordering literature.
Heaser presented sufficient evidence to show that she could place orders without using carbonless paper. According to Heaser, she could use a computer and electronic forms to place orders, a practice that was becoming more and more common at the time and is practically an industry standard today. Heaser also presented evidence that with the assistance of a phone, fax machine, courier system or email, any of the ordering could have been done without relying on carbonless paper.
The majority, however, concluded that Heaser could not be reasonably accommodated. The majority apparently reached this conclusion because it defined the use of carbonless paper as an essential function of Heaser’s job, instead of a tool to perform her job. Nowhere in the record is the use of carbonless paper defined as an essential function of Heaser’s job. As such, it is clearly in error for the majority to simply hold that Heaser must use car-bonless paper. Instead, once Heaser proposes using electronic forms to complete the task of ordering literature, Toro has the burden of showing that converting its ordei’ing system to electronic forms is too much of a burden on its business. Before we consider whether this accommodation is a burden, however, there is a material issue of fact that only a jury can resolve: whether Heaser can avoid using carbonless paper by using electronic forms to do the ordering.
Clearly, the evidence presented by Heaser is sufficient to make a prima facie showing that she can do her job from home and without carbonless paper. This is not to say that the accommodations requested by Heaser are necessarily feasible, rather the point is that factual disputes exist as to whether Heaser can be reasonably accommodated. As such, when material issues of fact are present, summary judgment is not appropriate.
With respect to the interactive process regarding reasonable accommodation, the majority faults Heaser in her failure to assert before the district court the question of exercising good faith by failing to engage in an interactive process. See Fjellestad v. Pizza Hut of America, Inc., 188 F.3d 944 (8th Cir.1999). However, examination of the district court opinion shows that both parties presented arguments of their participation in the interactive process. Further, Toro does not argue procedural default on appeal.
Implicit in the entire process of accommodation under the ADA is that the parties enter into an interactive process. 42 U.S.C. § 12112(a). According to the record, Heaser and Toro attempted to engage in this process, but before Heaser could attempt to work under the conditions defined by Toro, it terminated her. In other words, the process was never completed.
Based on Fjellestad, when an employer acts in bad faith in the interactive process, a jury can reasonably conclude that the employee would have been able to perform the job with accommodations. 188 F.3d at 953. The majority never considers whether Toro acted in bad faith because it uses waiver to sidestep the entire issue. To ignore this issue does a complete injustice to the evidence presented by both Heaser and Toro.
*838 Based on the record, Heaser informed Toro that she would “try” to work under Toro’s terms of accommodation, yet Toro terminated her without further discussion. The majority opinion slights the context in which this abrupt termination of negotiation took place: that the employer decided it would terminate plaintiff because they had heard that plaintiff was going to sue them.[7] This clearly presents a factual issue as to whether Toro engaged in the interactive process in good faith.
Nonetheless, whether Heaser waived her arguments on the interactive process or not, there are clearly issues of material fact in this case that make summary judgment inappropriate. As such, I would reverse the grant of summary judgment on the issue of disability discrimination[8] and remand the case to the district court for further proceedings.

. Such a response clearly falls short of a reasonable accommodation. The offer not only makes it prohibitive for her to carry on her job but also constitutes an unreasonable, adamant response that Toro cannot remove pollutants from the air.

. The affidavit of Toro's analyst says in relevant part: "The principal software Lynn Heaser used in her job at the time she stopped working, Dataflex, could not be used from a remote location.” (Bailey Aff. ¶ 3.)

. Although Toro’s analyst indicated that remotely accessed software programs are not designed to operate all day long, the record shows that Heaser asserted she could do the majority of her work off-line and send it to Toro's computer system periodically. Whether this request was reasonable should be weighed by a jury, rather than foreclose such traditional review by holding as a matter of law that what Toro said must be accepted as undisputed.

.The record shows that the major functions of Heaser’s job'were:
Manage distribution of merchandising materials to distributors, and direct dealers. Coordinate all facets of inventory system to ensure materials/billing are efficiently and *837 cost effectively managed. Develop and support Co-op Sign Programs for Toro and Lawn Boy. Coordinate with mass order entry position on management of overall system. Provide support for Merchandising Manager as needed.
(Arms Aff. Ex. A.)

. The record indicates that in the presence of over 100 Toro employees, the director of facilities announced that Toro's legal department had instructed him to ignore Heaser’s concerns and pleas for help because Heaser was planning to sue the company.

. In view of my dissent on the central issue, I choose not to pass on the ERISA issue.