# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-1705

_____

| | | |
|---|---|---|
| Debra Jane Burke, | * | |
| | * | |
| Plaintiff-Appellant, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the Southern |
| Iowa Methodist Medical Center, | * | District of Iowa |
| (IMMC); Iowa Health System, Inc., | * | |
| (IHS), | * | [UNPUBLISHED] |
| | * | |
| Defendants-Appellees. | * | |

_____

Submitted: November 15, 2001

Filed: February 6, 2002

_____

Before BYE and BEAM, Circuit Judges, and GOLDBERG,[1] Judge.

_____

PER CURIAM.

---

[1]The Honorable Richard W. Goldberg, Judge, United States Court of International Trade, sitting by designation.

Debra Jane Burke appeals from the district court's[2] adverse grant of summary judgment on her employment discrimination claim under the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101-12213. We affirm.

I.

Burke was employed by Iowa Methodist Medical Center (IMMC) on two occasions, with the second lasting from 1985-1998. From 1985 through 1993, she worked as a registered nurse in the neurosurgery unit. In 1993, Burke was exposed, on the job, to HIV and was later diagnosed HIV positive. She transferred to a non-patient care position and worked there until 1996. Between 1993-1996, she worked part-time completing pre-surgical assessments by phone and in the human relations department performing clerical work.

In 1996, Burke began to suffer from a major depressive disorder related to her HIV status and took medical disability leave. She received worker's compensation benefits during her leave. Later she received long-term disability benefits under IMMC's disability plan as well as from social security. Burke agrees that at the time she began receiving those benefits, and up through the time of this action, she was, for purposes of the long-term disability policy and social security, totally disabled. Since 1996, Burke has not been employed, but has performed volunteer work for a few hours each week.

In 1998, the long-term disability insurer, based upon updated medical information, believed the nature of Burke's disability had changed enough to disqualify her from receiving additional benefits. IMMC, upon receipt of a copy of the notice sent to Burke by the disability insurer, reviewed her employment file and

---

[2]The Honorable Ross A. Walters, Chief United States Magistrate Judge for the Southern District of Iowa, sitting by consent of the parties under 28 U.S.C. § 636(c).

discovered she had exhausted her unpaid leave benefits. IMMC sent Burke a letter indicating it wanted to "provide [her] with as many alternatives to termination as possible" and offered her a job as Outreach Education Instructor. This was a job IMMC created just for Burke involving work similar to the volunteer services she performed while on unpaid leave. The position required Burke to work 32 hours per week and was considered full-time. It was classified as light to medium duty requiring her to be on her feet four to six hours per day. Burke was advised that representatives from IMMC were available to answer any questions she might have about the job offer, her insurance coverage or any other matters. The letter stated Burke had 30 days to consider the offer and further advised her if "we hear nothing further . . . or are unable to work out employment, your employment . . . will terminate thirty days from the date of this letter."

It is undisputed Burke did not personally respond to the job offer. Instead, her worker's compensation attorney sent a letter advising IMMC Burke was unable to perform the full-time work it had offered, and attached a letter from a treating physician opining Burke was totally disabled. Neither Burke nor her attorney made any further inquiries into the position or other positions at IMMC. Following Burke's declination of the offer, her employment with IMMC was terminated.

On November 8, 1999, Burke filed suit against IMMC claiming her termination violated the ADA. Specifically, Burke argued IMMC failed to offer her a reasonable accommodation, and failed to engage in the prescribed interactive process with her in order to arrive at an appropriate accommodation. Burke argued that despite her total disability she was capable of performing some part-time work up to 20 hours per week. IMMC moved for summary judgment arguing Burke's claim of employability was in direct conflict with her claim of total disability. IMMC further argued Burke failed to request an accommodation and had failed to give any notice of her desire to engage in the interactive process. The district court determined Burke had failed to request an accommodation or to advise IMMC she wished to engage in the interactive

process. The district court further determined IMMC's obligation to engage in the interactive process had not been triggered.

On appeal, Burke argues IMMC knew or should have known she was capable of part-time work when the offer of full-time work was declined. Burke contends, insofar as she was performing part-time work approximately 2.5 years before she went on long-term disability, IMMC had sufficient notice she could perform part-time work when she was terminated. Burke further argues IMMC had an affirmative duty to use extra effort to determine what accommodations she required because her disability involved depression.

II.

We review the district court's grant of summary judgment de novo. Henerey v. City of St. Charles, 200 F.3d 1128, 1131 (8th Cir. 1999). Summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Id.; Fed. R. Civ. P. 56(c). "[S]ummary judgment should seldom be granted in discrimination cases." Bassett v. City of Minneapolis, 211 F.3d 1097, 1099 (8th Cir. 2000).

The ADA affords protection from discrimination to any "qualified individual with a disability." 42 U.S.C. § 12112(a). To establish a prima facie case of discrimination under the ADA, Burke must show (1) she has a disability within the meaning of the ADA, (2) she is qualified to perform the essential functions of her job, with or without reasonable accommodation, and (3) she suffered an adverse employment action because of her disability. Kiel v. Select Artificials, Inc., 169 F.3d 1131, 1135 (8th Cir. 1999) (en banc). Discrimination includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless [the employer] can

demonstrate that the accommodation would impose an undue hardship on the operation of the business of [the employer]." 42 U.S.C. § 12112(b)(5)(A). The proof necessary for discrimination cases is flexible and varies with the specific facts of each case. Young v. Warner-Jenkinson Co., Inc., 152 F.3d 1018, 1022 (8th Cir. 1998). IMMC agrees Burke is disabled within the meaning of the ADA, and Burke concedes she cannot return to her full-time duties. The question presented, then, is whether Burke has shown she is a qualified individual within the meaning of the ADA because she can perform the essential functions of her job with a reasonable accommodation.

To be a qualified individual within the meaning of the ADA, Burke must (1) possess the requisite skill, education, experience, and training for her position; and (2) be able to perform the essential job functions, with or without reasonable accommodation. Moritz v. Frontier Airlines, Inc., 147 F.3d 784, 786-87 (8th Cir. 1998). Only the second part of the definition is in question in this case. A plaintiff need only make a facial showing that a reasonable accommodation which would enable her to perform her essential job functions is possible. Fjellestad v. Pizza Hut of Am., Inc., 188 F.3d 944, 950 (8th Cir. 1999). The burden then shifts to the employer to show it is unable to accommodate the plaintiff. Id. Under the ADA, reasonable accommodations may include "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies . . . ." 42 U.S.C. § 12111(9). "This does not mean an employer is required to offer those accommodations in every case." Treanor v. MCI Telecomm. Corp., 200 F.3d 570, 575 (8th Cir. 2000).

When the necessary reasonable accommodation is "*not open, obvious, and apparent to the employer*" the initial burden rests primarily on the employee to suggest a reasonable accommodation. Wallin v. Minn. Dep't of Corr., 153 F.3d 681, 689 (8th Cir. 1998) Id. (citations omitted) (emphasis added). An employee cannot

expect an employer to read her mind expecting it to know she wants a particular accommodation. See Mole v. Buckhorn Rubber Prods., Inc., 165 F.3d 1212, 1218 (8th Cir. 1999). "To determine the appropriate reasonable accommodation it may be necessary for the [employer] to initiate an informal, interactive process with the [employee] with a disability in need of the accommodation. This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." 29 C.F.R. § 1630.2(o)(3). The EEOC's interpretive guidelines also state: "Once a qualified individual with a disability has requested provision of a reasonable accommodation, the employer must make a reasonable effort to determine the appropriate accommodation. The appropriate reasonable accommodation is best determined through a flexible, interactive process that involves both the employer and the [employee] with a disability." 29 C.F.R. § 1630, App. § 1630.9.

> [O]nce the employer knows of an employee's disability and the employee or the employee's representative has requested accommodation, the employer's obligation to participate in the interactive process has been triggered [and] a disabled employee must demonstrate the following factors to show that an employer failed to participate in the interactive process: "1) the employer knew about the employee's disability; 2) the employee requested accommodations or assistance for his or her disability; 3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and 4) the employee could have been reasonably accommodated but for the employer's lack of good faith."

Fjellstad, 188 F.3d at 952.

Finally, while the investigation into possible accommodations is interactive, the employer's obligation is not triggered until the plaintiff requests an accommodation or assistance with the disability. Cravens v. Blue Cross & Blue Shield of Kansas City, 214 F.3d 1011, 1021 (8th Cir. 2000).

Burke did not request any accommodation from IMMC. Nevertheless, she argues IMMC knew or should have known she was capable of performing part-time work similar to what she had done before going on long-term disability. She also argues her disability involved depression and IMMC had an affirmative duty to initiate the process without a request from Burke. Conversely, IMMC argues it was not put on notice Burke was capable of performing part-time work after she refused full-time work or that she was requesting a reasonable accommodation. IMMC argues its obligation to engage in the informal interactive process was not triggered because Burke never made a request for a reasonable accommodation or assistance.

Burke had not worked at IMMC for approximately 2.5 years when it discovered she had exhausted her unpaid leave benefits. Instead of terminating her, IMMC offered her a job. The letter conveying the offer requested Burke to call if she had any questions. IMMC advised her she would be terminated if the parties could not work out some arrangement for further employment. Burke responded through her attorney by advising IMMC she was totally disabled and could not perform the job. She did not ask for any accommodation or ask IMMC to engage in any discussions intended to arrive at an appropriate accommodation. Because Burke did not request an accommodation or assistance with her disability, IMMC had no obligation to offer an accommodation or to engage in the interactive process.

We reject Burke's argument suggesting IMMC knew or should have known she could work part-time. Although IMMC knew Burke had been able to work part time prior to becoming totally disabled, it did not, after Burke's claim of ongoing total disability, have any reason to suspect her disability had improved sufficiently to allow a return to part-time employment. Indeed, without additional input from Burke, IMMC could reasonably conclude the condition continued to disable her from any employment, with or without an accommodation. We also reject Burke's attempt to saddle IMMC with an affirmative obligation to initiate the interactive process because her disability involved depression. Burke was represented by an attorney who

responded to IMMC's job offer. After receiving a response to the job offer from Burke's legal representative, it was not unreasonable for IMMC to assume the attorney would have requested an accommodation or assistance if such was necessary or desired.

## III.

The district court's order granting summary judgment is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.