# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-4532

_____

James Sharbono,

*Plaintiff - Appellant,*

v.

Northern States Power Company, doing business as Xcel Energy, Inc.,

*Defendant - Appellee.*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: February 13, 2018
Filed: September 6, 2018

_____

Before SMITH, Chief Judge, MURPHY and COLLOTON, Circuit Judges.[*]

_____

COLLOTON, Circuit Judge.

James Sharbono sued his former employer, Northern States Power Company, alleging that Northern failed to accommodate his disability in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the

_____

[*]This opinion is filed by Chief Judge Smith and Judge Colloton under Eighth Circuit Rule 47E.

Minnesota Human Rights Act, Minn. Stat. § 363A.01 *et seq.* The district court[1] granted summary judgment in favor of Northern and dismissed the complaint. We affirm.

I.

We recite the facts in the light most favorable to Sharbono. Sharbono was injured by an electric shock on a jobsite in 1991. He suffered damage to his left foot that required the amputation of several toes and surgical reconstruction of the foot. After rehabilitation, Sharbono returned to work as a journeyman lineman with several different employers, although he carried a medical restriction that he not wear steel-toed boots. Sharbono started working for Northern in 1993 and became a full-time journeyman lineman with Northern in 1997.

Northern's policy before 2008 required certain employees facing hazardous work conditions to wear "safety-toe footwear" that met the requirements of American National Standards Institute standard Z-41. Northern, however, allowed an exception based on a "statement from the employee's doctor stating he/she cannot wear safety toe footwear." Sharbono did not wear a steel-toed boot on his left foot while working for Northern before 2008.

As of 2008, however, Northern's policy no longer provided for exceptions. The company's personal protective equipment policy mandated that certain employees, including Sharbono, wear safety footwear. The policy also required that the footwear be marked with a stamp that showed compliance with an international performance standard for safety footwear known as ASTM F2413.

---

[1]The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota.

Northern then required Sharbono to begin wearing steel-toed boots. Through a disability consultant, Northern offered Sharbono several suggestions to help mitigate the impact of the steel-toed boots. Sharbono also obtained modified boots, but the boots were not certified as compliant with the ASTM standard, and Northern did not allow him to wear them. Sharbono began to wear steel-toed boots that were stamped as compliant, but started to experience discomfort in his left foot. Over the next several years, Sharbono continued to experience pain from wearing the steel-toed boots.

In 2011, Sharbono increasingly used his sick leave to cover absences from work. In November of that year, Sharbono began taking leave intermittently under the Family and Medical Leave Act. Sharbono requested accommodation from Northern for his foot impairment in an April 2012 meeting with a supervisor. Sharbono submitted an additional doctor's note that said it was medically necessary for Sharbono to cease wearing the steel-toed boots, but he received no response from the supervisor.

In late June 2012, Sharbono's union requested on his behalf that the company waive the steel-toed boot requirement. In August, Northern denied Sharbono's request for accommodation. Northern followed up with a letter saying that the company denied the request because it "cannot eliminate the potential foot hazards that are present in the daily work of a lineman." Northern explained that "granting this waiver would be a violation of Company policy and a violation of OSHA standard 1910.136."

In October 2012, Northern offered to help Sharbono find another job at the company during what the Northern called a ninety-day job search. In this same meeting, Northern informed Sharbono that he was eligible under the collective bargaining agreement for "disability retirement benefits," including pay at roughly

fifty percent of his base income and insurance benefits. Sharbono chose to retire and receive the disability retirement benefits.

In November, company representatives discussed Sharbono's request to retire and receive the disability retirement benefits. Northern arranged a medical appointment for Sharbono, and the evaluating doctor opined that Sharbono should be able to obtain a compliant, modified boot from an orthotics company. When Northern's manager of disability solutions contacted the orthotics company, the company first told Northern that it could acquire the desired boots. On further inquiry, however, a manufacturer told the orthotics company that the boots could be stamped with the "ASTM F2413-11 stamp" only if "someone from OSHA" observed the boot-making process. The orthotics company then informed Northern that while a custom boot could be manufactured, it could not be stamped with the ASTM stamp. Northern then informed Sharbono that it was placing him in a retired status with disability retirement benefits.

Sharbono sued, alleging several violations of the Americans with Disabilities Act and the Minnesota Human Rights Act. The district court granted summary judgment in favor of Northern on all claims. Sharbono appeals only his claims that Northern failed to accommodate his disability as required by the federal and state statutes. We review a district court's grant of summary judgment *de novo*, viewing the evidence and drawing all reasonable inferences in the light most favorable to Sharbono. *Mackey v. Johnson*, 868 F.3d 726, 729 (8th Cir. 2017). Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

II.

Sharbono alleges a claim under both the ADA and the Minnesota Human Rights Act. Where a plaintiff is disabled under the ADA, we have applied the same standards to disability claims under both statutes, *see Kobus v. Coll. of St. Scholastica, Inc.*, 608 F.3d 1034, 1038 (8th Cir. 2010), but a recent Minnesota Court of Appeals decision held that the state statute places fewer duties on employers than does the ADA. *See McBee v. Team Indus., Inc.*, 906 N.W.2d 880, 887 (Minn. Ct. App. 2018), *petition for review granted*, No. A17-0060 (Minn. Mar. 28, 2018). Because we conclude that Northern satisfied all of the ADA's requirements, we need not decide whether claims under the ADA and the Minnesota Human Rights Act concerning the interactive process should now be analyzed differently.

The ADA prohibits employers from discriminating against qualified individuals on the basis of disability. 42 U.S.C. § 12112(a). Discrimination includes "not making reasonable accommodations to the known physical or mental limitations" of an employee, unless the employer can "demonstrate that the accommodation would impose an undue hardship on the operation of the business." *Id.* § 12112(b)(5)(A).

"To determine whether an accommodation for the employee is necessary, and if so, what that accommodation might be, it is necessary for the employer and employee to engage in an 'interactive process.'" *Peyton v. Fred's Stores of Ark., Inc.*, 561 F.3d 900, 902 (8th Cir. 2009) (quoting *Fjellestad v. Pizza Hut of Am., Inc.*, 188 F.3d 944, 951 (8th Cir. 1999)). To establish that an employer failed to participate in the interactive process, an employee must demonstrate that the employer knew about his disability, and that the employee requested an accommodation for his disability. *Id.* There is no dispute here about those elements. The employee must then prove that the employer "did not make a good faith effort to assist the employee in seeking

accommodations." *Id.* (quoting *Fjellestad*, 188 F.3d at 952). The district court ruled that Sharbono failed to generate a material dispute on this element.

Sharbono raises three arguments why Northern did not make a good faith effort. He first contends that Northern engaged in "inexcusable delay," because the company did not timely respond to a request for accommodation in October 2011. Sharbono did not present sufficient evidence, however, that he made a request at that time. He could not recall whether he asked for an accommodation in an October 2011 meeting with his supervisor, and the supervisor's notes do not mention such a request. The employer is not required to undertake the interactive process until the employee makes a request for accommodation. *EEOC v. Prod. Fabricators, Inc.*, 763 F.3d 963, 971 (8th Cir. 2014). The earliest request supported by the evidence occurred in April 2012. Northern responded within four months, and Sharbono was paid during the interim while using sick leave. Under the circumstances, the timing of Northern's response is insufficient to support a finding that the company did not act in good faith. *See Loulseged v. Akzo Nobel Inc.*, 178 F.3d 731, 737 (5th Cir. 1999).

Sharbono next argues that Northern prematurely abandoned the interactive process. He complains that after the orthotics company notified Northern in February 2013 that it could not produce a boot that qualified for the ASTM stamp, Northern failed to pursue more options to find a conforming boot. But once Northern was informed by an expert in the industry that it could not produce a boot that met Sharbono's needs and qualified for the ASTM stamp, it was reasonable for the company to discontinue its efforts. Northern tried in good faith to find a solution that would permit Sharbono to work. The company ceased looking only when it was informed that the objective of a stamped, compliant boot was not achievable. This evidence does not support a finding that the company failed to make good faith efforts.

Sharbono contends finally that Northern erroneously claimed that federal regulations require its employees to wear stamped boots, and that Northern's reliance on the regulation shows its lack of good faith. The regulation seems to permit footwear if an "employer demonstrates" that the footwear "is at least as effective as protective footwear that is constructed in accordance with one of" several enumerated industry safety standards. 29 C.F.R. § 1910.136(b)(2). But Sharbono never disputed the company's interpretation of the regulation during the interactive process, and the employer made good faith efforts to secure a boot that met the performance standards for safety footwear and bore the ASTM stamp. Under the circumstances, that Northern did not attempt to demonstrate that some other boot would be "as effective" as a boot that conformed to the performance standards is insufficient to show a lack of good faith in the interactive process.

We thus agree with the district court that Northern interacted in good faith as a matter of law. Northern met twice with Sharbono in 2013 about his request for accommodation and offered to help Sharbono with the process of applying for a different job with the company. After Sharbono elected to retire with disability retirement benefits, Northern still attempted to obtain a boot that would allow him to work. For the reasons discussed, Sharbono's arguments do not establish a genuine dispute of material fact for trial. Sharbono complains that the district court failed to construe the facts in the light most favorable to him as the non-movant, but the facts that he identifies are not material to the legal dispute. The record supports the district court's conclusion.

\*　　\*　　\*

The judgment of the district court is affirmed. The motion to supplement the record on appeal with evidence that was not presented to the district court is denied. *See Barry v. Barry*, 78 F.3d 375, 379 (8th Cir. 1996).

_____