No. 95-2531

Virginia L. Stemmons,          *
                                      *
     Appellee,             *
                                      *  Appeal from the United States
    v.                  *  District Court for the Western
                                      *  District of Missouri.
Missouri Department of       *
Corrections,             *
                                      *
     Appellant.          *

Submitted:  February 14, 1996

Filed:  May 7, 1996

Before BOWMAN, BEAM, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

MORRIS SHEPPARD ARNOLD, Circuit Judge.

Virginia Stemmons applied to be an Educational Supervisor I at the school at the Boonville, Missouri, Correctional Center.  Before applying for this position, Ms. Stemmons had worked as a teacher for the Missouri Department of Corrections ("the department") for more than twenty years and had taught at the Boonville prison school for over ten.  Although twenty candidates were eligible to interview for the position, only eight elected to do so.  Three department officials, Mary Hosier, Max Safely, and Dr. John Bell, conducted the interviews.  Acting on the panel's recommendation, the department hired Jay Fuzzell, a white man, for the position.

Ms. Stemmons then sued the department for race discrimination pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C.

§ 2000e-2(a)(1).  Following a two-day trial, the jury returned a verdict for Ms. Stemmons.  The department appeals and we affirm.

I.

A.

The department first asserts that the district court[1] erred when it refused to give the jury a so-called "business judgment" instruction.  At the instructions conference, the department proposed the following instruction:

> An employer has the right to assign work to an employee, to change an employee's duties, or to refuse to promote an employee to a particular job for a good reason, bad reason, or no reason at all absent intentional discrimination based on ... race.
>
> You should not find that the failure to promote plaintiff is unlawful just because you may disagree with the defendant's stated reasons or because you believe the decision was harsh or unreasonable, as long as the defendant would have reached the same decision regardless of the plaintiff's ... race.

Although the plaintiff raised no objection to this instruction, the district court rejected it.  Instead, it simply instructed the jury to find for Ms. Stemmons if "race was a motivating factor" in the decision and if the department would have selected her if she had not been black.

In Walker v. AT&T Technologies, 995 F.2d 846, 849-50 (8th Cir. 1993), we ordered a new trial because the district court refused to instruct the jury that the defendant had a right to make employment decisions for any reasons except discriminatory ones.  The department argues that Walker required the district court to give the business judgment instruction in this case.  (The department correctly notes that the language of the proposed instruction was taken directly from the text of Walker.  See id. at 850.)

_____

[1]The Honorable Scott O. Wright, United States District Judge for the Western District of Missouri.

-2-

Ms. Stemmons, on the other hand, contends that _Walker_'s holding was confined to the narrow facts of that case.

It is true that _Walker_ contains language that can be read to limit its holding to a specific set of facts. _See_ _id._ at 849-50. But we also made it clear in _Walker_ that "when a proposed instruction addresses an issue that is crucial to a fair presentation of the case to the jury, the trial court has the obligation to give an appropriate instruction on that issue." _Id._ at 849. It is well settled that an employer "is entitled to make its own subjective personnel decisions ... for any reason that is not discriminatory." _Blake v. J. C. Penney Company, Inc._, 894 F.2d 274, 281 (8th Cir. 1990); _see also_ _Neufeld v. Searle Laboratories_, 884 F.2d 335, 340 (8th Cir. 1989) ("courts have no business telling [employers] how to make personnel decisions"); _Smith v. Monsanto Chemical Co._, 770 F.2d 719, 723 n.3 (8th Cir. 1985), _cert._ _denied_, 475 U.S. 1050 (1986) ("[i]t is an employer's business prerogative to develop as many arbitrary, ridiculous and irrational rules as it sees fit"). We believe, therefore, that, in an employment discrimination case, a business judgment instruction is "crucial to a fair presentation of the case," _Walker_, 995 F.2d at 849, and we agree with the department that the district court must offer it whenever it is proffered by the defendant. (A defendant is not, of course, entitled to demand that the business judgment instruction include specific language. _Blake_, 894 F.2d at 282. "[T]he form and language of jury instructions are committed to the sound discretion" of the district court. _Walker_, 995 F.2d at 849, quoting _Williams v. Valentec Kisco, Inc._, 964 F.2d 723, 731 (8th Cir.), _cert._ _denied_, 506 U.S. 1014 (1992).)

B.

Although the district court erred when it refused to give a business judgment instruction, a new trial would be in order only if the error prejudiced the department. _Walker_, 995 F.2d at 850;

-3-

Crues v. KFC Corp., 729 F.2d 1145, 1152 (8th Cir. 1984).  In this case, we believe that the omission was not prejudicial because the trial record leads us to conclude that the absence of a business judgment instruction did not affect the verdict.

There is no contention that Ms. Stemmons did not make a prima facie case that she was discriminated against because of her race.  But the department articulated a non-discriminatory reason for not hiring Ms. Stemmons.  It claimed that Mr. Fuzzell was selected because he had more, and more recent, administrative experience than Ms. Stemmons.  Department officials also claimed that they preferred Mr. Fuzzell because he had more computer experience than Ms. Stemmons and because he dressed more professionally than Ms. Stemmons for the interview.

At that point, the burden shifted to Ms. Stemmons to demonstrate that the department's explanation was pretextual.  One way of doing that was to present "'evidence of conduct or statements by persons involved in the decisionmaking process that may be viewed as directly reflecting the alleged discriminatory attitude ... sufficient to permit the factfinder to infer that that attitude was more likely than not a motivating factor in the employer's decision.'"  Radabaugh v. Zip Feed Mills, Inc., 997 F.2d 444, 449 (8th Cir. 1993), quoting Ostrowski v. Atlantic Mut. Ins. Cos., 968 F.2d 171, 182 (2d Cir. 1992); see also Beshears v. Asbill, 930 F.2d 1348, 1354 (8th Cir. 1991) (relying on "[c]omments which demonstrate a discriminatory animus in the decisional process ... or those uttered by individuals closely involved in employment decisions") (internal quotation marks and citations omitted).  We believe that Ms. Stemmons did indeed produce evidence that a reasonable factfinder could conclude proved that the department's explanation was pretextual.

Within forty-eight hours after her interview, and before she learned that she had not been selected, Ms. Stemmons sent a twenty-nine-page letter to Gail Hughes, Deputy Director of the Missouri Department of Corrections. In the letter, she complained about the way that she had been treated both before and during her interview, and she expressed her belief that she was mistreated because of her race. She was particularly upset about several comments made by department officials. Ms. Stemmons presented evidence at trial substantiating the complaints in her letter. She testified that she asked her immediate supervisor, Mr. Safely, if she could leave her class twenty-five minutes before the interview. Mr. Safely refused her request and instead allowed her to leave ten minutes early. Ms. Stemmons testified that, because she only had ten minutes, she could not change into a suit or dress for the interview. At trial, one reason the panel members gave for preferring Mr. Fuzzell was that he was wearing a suit, while Ms. Stemmons was not dressed professionally. (She was wearing pants and a sweater.)

While she waited for her interview to begin, Ms. Stemmons spoke with David Miller, the Superintendent of the Department of Corrections. She testified that, after informing Mr. Miller that she was interviewing to be an Educational Supervisor I, he told her, "You're not going to get this position." (Mr. Miller testified that he said, "You don't want that position, do you?") She was upset by his remark and attempted to speak to Dr. Bell about it as he left the interview room. She testified that, after relaying the exchange to Dr. Bell, he replied "Good ol' Miller, did he say that?" Dr. Bell admitted that he might have made such a remark. Ms. Stemmons also testified that, after Dr. Bell made that comment, he stopped Larry Wilson (another department employee) in the hallway, laughed, and said, "Larry, Virginia here is looking for an administration job, can you believe that? Do you have any administration jobs you can let Virginia have?" (Dr. Bell

remembered the exchange somewhat differently; he testified that he said, "Larry, do you have Educational Supervisor positions open? Ms. Stemmons is interested in such a position.")

All of the relevant witnesses testified that Ms. Stemmons was upset when she began the interview and that she became more upset as the interview progressed. Ms. Stemmons testified that the panel did not ask her any of the questions that the department had scripted for Educational Supervisor interviews. Instead, she testified that Dr. Bell asked her the following string of questions: "Suppose nobody wants to work for you? Suppose everybody quits? Suppose nobody will let you come into their classroom to evaluate them?" Ms. Stemmons responded, "Are you saying this -- that nobody would want to work for me because I'm a black lady?" She testified that Dr. Bell replied, "Yes, Virginia, you're black, and that ain't gonna change, so how are you going to deal with it?" Dr. Bell testified that he remembered Ms. Stemmons expressing concern that her race had affected her promotional opportunities, but he did not recall the exact nature of the exchange. Ms. Hosier, however, testified that she remembered Dr. Bell making a similar statement to Ms. Stemmons. Mr. Safely also remembered the comment, but explained that he felt that Dr. Bell was merely trying to get Ms. Stemmons to answer the original question.

Ms. Hosier also admitted that she had written the words "block out race" in her notes during Ms. Stemmons's interview. During her deposition, Ms. Hosier could not explain what this notation meant. During the trial, however, Ms. Hosier testified that she simply scribbled the note in response to something Ms. Stemmons said. Ms. Stemmons's attorney pointed out the discrepancy during Ms. Hosier's testimony.

All of this evidence tends to undermine the department's proffered reason for denying Ms. Stemmons a promotion, and thus to establish that it was a pretext. In light of this evidence, moreover, we believe that the district court's failure to give a business judgment instruction was harmless error. The department was given the opportunity to present evidence supporting its assertion that Mr. Fuzzell was selected for non-discriminatory reasons. May v. Arkansas Forestry Comm'n, 993 F.2d 632, 638 (8th Cir. 1993). (The jury was, of course, entitled to draw any reasonable inferences from the evidence and to credit or discredit any testimony.) Furthermore, the department's attorney explained the business judgment rule to the jury during his closing argument, and the court instructed the jury not to find for Ms. Stemmons if she would not have been selected regardless of her race.

The record in this case is unlike Walker, 995 F.2d at 850, where we found that the defendant was prejudiced by the court's failure to give a business judgment instruction. In Walker, the plaintiff's case consisted primarily of the testimony of co-workers who indicated that the plaintiff was the most qualified candidate. Id. None of that testimony directly indicated that the plaintiff's age (the relevant question in Walker) played a part in the hiring decision. Id. In this case, on the other hand, the jury heard testimony that very strongly suggested that race affected the hiring decision.

II.

The department also urges us to reverse the judgment because Ms. Stemmons's attorney made an improper comment during his closing argument. The attorney began his remarks by stating, "You know, ladies and gentlemen, I don't take these cases very often, and I only take them when I think there is something there." The department's attorney objected to the remark, but the trial court overruled the objection.

We have held that "to constitute reversible error, statements made in closing arguments must be plainly unwarranted and clearly injurious." <u>Griffin v. Hilke</u>, 804 F.2d 1052, 1057 (8th Cir. 1986), <u>cert.</u> <u>denied</u>, 482 U.S. 914 (1987). Reversal is inappropriate "when the error is harmless and did not affect the substantial rights of the parties." <u>Williams v. Fermenta Animal Health Co.</u>, 984 F.2d 261, 266 (8th Cir. 1993). A party seeking reversal in circumstances like the present ones must make a "concrete showing" that he or she was prejudiced by the objectionable statement. <u>Vanskike v. Union Pacific R.R. Co.</u>, 725 F.2d 1146, 1149 (8th Cir. 1984).

Although counsel should not have expressed his opinion about the merits of the case, <u>see</u>, <u>e.g.</u>, <u>Johnson v. Bowers</u>, 884 F.2d 1053, 1055-56 (8th Cir. 1989), the department does not claim that the attorney behaved inappropriately at any other time, and we do not believe that this one isolated remark during the closing statement affected the jury's verdict. <u>See</u> <u>Sanders-El v. Wencewicz</u>, 987 F.2d 483, 485 (8th Cir. 1993) ("[i]f this were an isolated incident ... we might have difficulty finding prejudice"); <u>City of Malden v. Union Elec. Co.</u>, 887 F.2d 157, 164 (8th Cir. 1989) ("[d]efense counsel's comments were brief and were made in the context of a lengthy closing argument").

### III.

For the foregoing reasons, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.