# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-1371

_____

Ricky Belk,                                     *
                                                *
            Appellee,                           *
                                                *   Appeal from the United States
      v.                                        *   District Court for the Western
                                                *   District of Arkansas.
Southwestern Bell Telephone                     *
Company,                                        *
                                                *
            Appellant.                          *

_____

Submitted: September 15, 1999

Filed: November 9, 1999

_____

Before BOWMAN, LAY, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

_____

LAY, Circuit Judge.

Southwestern Bell Telephone Company (SWB) challenges the grant of injunctive relief and the award of attorney's fees and costs under the Americans with Disability Act, 42 U.S.C. §§ 12101 *et seq.* (1995) (ADA), to its employee, Ricky Belk (Belk). SWB appeals on five separate grounds, including the lower court's refusal to instruct the jury on business necessity under 42 U.S.C. § 12112(b)(6). Because we find that

the case is to be remanded for a new trial on the jury instruction issue, we need not address SWB's other arguments.[1]

## I. BACKGROUND

Belk suffers from the residual effects of polio, forcing him to wear a full-length leg brace at all times. He has worked as a Service Representative for SWB since 1981 primarily dealing in customer service via the telephone. In 1995, Belk applied within the company for a position as a Customer Service Technician (CST). CSTs are responsible for the maintenance of both underground and suspended telephone cables. Much of a CST's work occurs in manholes and on aerial cables. SWB's job description for the CST position states, among other things, that a CST must be able to move or lift material weighing up to 150 pounds, climb ladders and poles, and work while "kneeling, stooping, crouching, crawling or [maintaining] other uncomfortable positions."

SWB administered three tests to determine CST applicant qualification. Applicants first took a written, technical test. SWB then administered a manual dexterity test and a physical performance test (PPT) to those applicants who were successful on the written exam.[2] The PPT had four subdivisions, each of which had to be passed before an applicant qualified for the position: 1) the arm lift; 2) the arm

---

[1]We have, however, reviewed SWB's claim that the district court erred in denying its motion for judgment as a matter of law. We have concluded, based on the credibility findings of the jury, that the district court correctly denied SWB's motion. In view of the fact that the case is to be remanded for a new trial, we need not discuss the evidentiary proof relating to Belk's burden of proof.

[2]It should be noted that SWB did not require individuals with sufficient practical job experience to take the PPT.

strength endurance test; 3) sit-ups; and 4) the leg lift. Belk passed every aspect of each test except the leg lift.

Before undertaking the PPT, Belk requested an accommodation for both the sit-up and leg lift portions. He was especially concerned about the leg lift, which purported to measure the amount of force generated by the leg muscles. The leg lift required applicants to extend from a squatting position while balancing the weight of tools and belts similar to those worn by a CST. Because Belk's legs are weakened from polio, he is unable to perform "squats" in this manner. He proposed that SWB allow him to either climb a ladder while carrying the extra weight or use a leg-press machine (also known as a "donkey press") at his local gym.[3] He also requested that he be allowed to perform "crunches" instead of full sit-ups. SWB refused both of Belk's requested accommodations to the left lift, opting instead to modify the test by widening the starting angles at the knee and hip so Belk was in a more upright position. Even in this position, Belk only lifted 112.3 pounds and the minimum passing score was 148 pounds.

Belk filed his Amended Complaint in the United States District Court, Western District of Arkansas on July 17, 1998. He claimed SWB violated the ADA by failing to afford him a reasonable accommodation for the leg lift. SWB argued that the denial was job-related and consistent with business necessity. The jury found that SWB purposefully discriminated against Belk, but did not award money damages or reinstatement because it also found that SWB would have made the same decision to reject Belk regardless of his disability. The district court noted in its Judgment and Order that the jury "clearly rejected" SWB's defense of business necessity, and the court also expressed some trepidation as to the propriety of the "Same Decision" jury

---

[3]A leg-press machine allows the individual to sit in a chair with the feet in front of the body and "press" the weight out from the body. In contrast, the leg lift required the participant to maintain a standing position and lift the weight "up" instead of "out."

instruction.[4]   Nevertheless, the court let the verdict stand noting that Belk never objected to the inclusion of the "Same Decision" instruction or the corresponding jury interrogatory.

The district court issued a broad injunction in which it enjoined SWB from:

> engaging in any employment practice which discriminates against the plaintiff on the basis of his disability, including, but not limited to, the application of qualification standards, tests, or selection criteria that screen out or tend to screen out or otherwise deny the CST position to the plaintiff because of his disability.

Furthermore, SWB was required to "make such reasonable accommodations as are necessary under the circumstances in connection with the administration of any and all physical performance tests and safety training courses that the plaintiff (and all other applicants, to include applicants with a disability) must successfully complete for placement in the desired CST position." SWB thereafter moved to stay the injunction and for judgment as a matter of law. Both motions were denied, and this appeal ensued.

## II. DISCUSSION

### A. Coverage of the ADA and Defining "Disability"

The ADA prohibits employment discrimination against qualified individuals with a disability because of their disability. Miller v. City of Springfield, 146 F.3d 612, 614 (8th Cir. 1998) (citing 42 U.S.C. § 12112(a)). A "qualified individual with a disability"

---

[4]The district court stated in footnote one of its Judgment and Order that the jury should not have been given the "Same Decision" instruction because SWB did not present any proof on this issue.

is a person "with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position." Webb v. Mercy Hosp., 102 F.3d 958, 959 (8th Cir. 1996) (citing 42 U.S.C. § 12111(8)). A "disability" for purposes of the ADA is either "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." Miller, 146 F.3d at 614 (citing 42 U.S.C. § 12102(2)).

In order for Belk to establish a prima facie case under the ADA, he must establish that he is disabled as defined by the Act; he is qualified to perform the essential functions of the position with or without reasonable accommodation; and he has suffered an adverse employment action because of his disability. Webb, 102 F.3d at 959-60 (citation omitted); Miller, 146 F.3d at 614 (citation omitted). As long as an employee shows that his disability was a "motivating factor" in the challenged employment decision, he is entitled to some relief. Pedigo v. P.A.M. Transp., Inc., 60 F.3d 1300, 1301 (8th Cir. 1995) (citing 42 U.S.C. § 2000e-2(m)). However, should the employer prove that it would have made the same employment decision regardless of the complainant's disability, the complainant's recovery is limited to declaratory and injunctive relief and some attorney's fees and costs. Pedigo, 60 F.3d at 1301 (citing 42 U.S.C. § 2000e-5(g)(2)(B)(i)). The employee is not entitled to reinstatement, back pay, or damages in that situation. Id. (citing 42 U.S.C. § 2000e-5(g)(2)(B)(ii)).

In Sutton v. United Airlines, __ U.S. __, 119 S. Ct. 2139 (1999), twin sisters brought an ADA claim based on their denial of employment as commercial airline pilots. The Supreme Court upheld a dismissal of plaintiffs' claim under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim on which relief could be granted. Both sisters suffered severe myopia and, uncorrected, their visual acuity was 20/200 or worse in the right eye, and 20/400 or worse in the left eye. However, with the use of corrective lenses, both women had 20/20 vision. The Court determined that neither woman was disabled under the ADA as "the determination of whether an individual is

disabled should be made with reference to measures that mitigate the individual's impairment . . . ." Sutton, 119 S. Ct. at 2143. With glasses serving as a mitigating measure, both women had perfect eyesight; thus, the Supreme Court held they could not claim protection under the ADA. In so holding, the Court rejected the opinions of the Equal Employment Opportunity Commission (EEOC) and the Department of Justice (DOJ), as espoused in their ADA Guidelines, that a disability should be determined without regard to mitigating measures. 29 CFR pt. 1630, App., § 1630.2(j) (1998); 28 CFR pt. 35, App. A, § 35.104 (1998); 28 CFR pt. 36, App. B, § 36.104 (1998). The Court, noting that the existence of a disability is an individualized inquiry, felt that the guidelines approach "would often require courts and employers to speculate about a person's condition and would, in many cases, force them to make a disability determination based on general information about how an uncorrected impairment usually affects individuals, rather than on the individual's actual condition." Sutton, 119 S. Ct. at 2147.

SWB argues under Sutton that Belk is not "disabled" for purposes of the statute because he can walk and engage in many physical activities with the use of his leg brace. SWB points out that Belk himself admitted at trial that he coaches Little League, hunts, fishes, and has built a garage and an addition to his home. We reject SWB's argument. The Sutton Court stated that the mere use of a corrective device alone is not enough to relieve an individual of a disability; rather, "one has a disability under subsection A if, notwithstanding the use of a corrective device, that individual is substantially limited in a major life activity." Id. at 2149. In this case, it can hardly be disputed that Belk is disabled in the major life activity of walking. The full range of motion in his leg is limited by the brace, and his gait is hampered by a pronounced limp. These considerations abide by the language in Sutton which directs courts to contemplate the negative side effects of mitigating measures, as well as the positive, in determining disability. Id. at 2147. Unlike the petitioners in Sutton, Belk's brace does not allow him to function the same as someone who never had polio. Therefore, he is clearly "disabled" as defined by the ADA.

## B. Job-Relatedness and Business Necessity

The ADA states that the term "discriminate," as used under the statute, includes:

> using qualification standards, employment tests or other selection criteria that screen out or tend to screen out an individual with a disability or a class of individuals with disabilities *unless the standard, test or other selection criteria, as used by the covered entity, is shown to be job-related for the position in question and is consistent with business necessity . . . .*

42 U.S.C. § 12112(b)(6) (emphasis added). An employer urging a business necessity defense must validate the test or exam in question for job-relatedness to the specific skills and physical requirements of the sought-after position. See Smith v. City of Des Moines, Iowa, 99 F.3d 1466, 1475 (8th Cir. 1996) (Heaney, J., concurring in part and dissenting in part). Furthermore, "an examiner must consider meaningful work-related information, including the type of activity to be performed [and] the level and duration of effort required." Smith, 99 F.3d at 1475.

Belk urges that his suit is based on "disparate treatment," and, therefore, SWB may not raise the business necessity defense. He cites Walker v. AT&T Technologies, 995 F.2d 846 (8th Cir. 1993), and Houghton v. SIPCO, Inc., 38 F.3d 953 (8th Cir. 1994), for the proposition that no business necessity rule exists to absolve a defendant from liability for intentional discrimination. SWB refutes this, arguing that neither case can be read as standing for such. We agree with SWB. Belk brings this action under the ADA which defines "discrimination" against a qualified person in terms of the failure to accommodate. Likewise, his complaint is substantially based on SWB's failure to reasonably accommodate a disabled person under the Act. In addition to the alleged "disparate treatment," Belk's complaint alleges the test administered has a "disparate impact." We believe that as long as the theory behind the lack of accommodation is conceivably job-related, as claimed, then the employer should be

entitled to raise the business necessity rule.[5]  Belk does not argue that SWB's refusal to accommodate him was pretextual; thus, we find that he cannot use the distinction between disparate treatment and disparate impact discrimination to argue against the possible application of the business necessity defense.

SWB directs our attention to Allen v. Entergy Corp., 181 F.3d 902 (8th Cir. 1999), which addressed a Title VII claim by a group of African-American employees who were terminated as a result of a reduction in force.  The employees were given a selection test to determine who would be laid off, and the plaintiffs claimed the test had a disparate impact on African-American employees.  The defendants were granted summary judgment on the basis that the selection test was properly validated as job-related in accordance with EEOC guidelines.  This court affirmed.  We held that the plaintiffs failed to rebut the defendants' evidence of business necessity by only submitting affidavits containing conclusory allegations of discrimination and unfair treatment in response.  Allen, 181 F.3d at 905-06.

In the present case, SWB argues that it submitted relevant and persuasive evidence of job-relatedness and business necessity.  SWB presented the testimony of Dr. Deborah Gephardt, Ph.D., owner of Human Performance Systems, Inc.[6] and

---

[5]We note that 42 U.S.C. § 12113(a) states that:

> [i]t may be a defense to a charge of discrimination . . . that an alleged application of qualification standards, test, or selection criteria that *screen out or tend to screen out or otherwise deny* a job or benefit to an individual with a disability has been shown to be job-related and consistent with business necessity . . . .

(emphasis added).

[6]Human Performance Systems, Inc. is a company that develops procedures for employers in selecting employees and evaluating them for promotion.

developer of the PPT. Dr. Gephardt testified that the PPT's purpose was to evaluate the physical performance qualifications of applicants, as well as address safety concerns by reducing injuries and lost time from work.[7] Dr. Gephardt discussed, in detail, the process behind the development of the PPT specifically mentioning compliance with the ADA job-relatedness requirement and other federal regulations.[8] She explained that the first step in creating the PPT was to conduct a job analysis where she observed and interviewed CSTs in the work environment. She then developed a task list which included all the tasks performed by CSTs. From this list, the critical and essential tasks and functions of the job were identified, as well as the physical abilities necessary to perform those tasks. Dr. Gephardt explicitly stated that in creating the PPT, she was attempting to relate it to the ability to do the job. Although SWB does not address the plaintiff's response to this evidence, it claims the district court abused its discretion in refusing to instruct the jury on business necessity.

## C. Jury Instructions

SWB requested instructions on several different issues only one of which, numbered Instruction 20, addressed business necessity. Instruction 20 stated:

---

[7]It should be noted that the PPT was used for other positions within the company besides that of a CST. The result guidelines, however, were adjusted to comport with the level of physical exertion required in each position. Jobs were classified into three groupings (A, B, and C), with Group A including the most strenuous jobs and Group C containing the least strenuous ones. The minimum passing score was different depending on the physical requirements of the grouping. The position of CST fell under Group A.

[8]Dr. Gephardt identified the ADA, the Uniform Guidelines on Employee Testing, and the Civil Rights Act of 1991 as legal requirements that shaped the development of the PPT.

> Southwestern Bell Telephone also contends that Plaintiff Ricky Belk was not qualified for the position he sought because he did not pass the Physical Performance Test. Southwestern Bell Telephone Company contends that all applicants for the position for which Belk applied, excluding those applicants who have satisfactory past job experience, are required to take this test. An employer may use [the] qualification of standards, employment tests, or other selection criteria that screen out or tend to screen out an individual with a disability or a class of individuals with disabilities, on the basis of disability, as long as the standard, test, or other selection criterion, as used by the employer, is job related for the position in question, is consistent with business necessity, and performance cannot be accomplished by reasonable accommodation.

The court summarily refused this instruction, stating later that all of SWB's proposed instructions were cumulative and adequately covered by other instructions. SWB argues that a business necessity instruction is crucial to the fair presentation of any employment discrimination case and must be given whenever proffered by the defendant. This court echoed that assertion in Scamardo v. Scott County, Nos. 98-3173, 98-3308, 98-3382, 1999 WL 642954, at *3 (8th Cir. Aug. 25, 1999). See also Wolff v. Brown, 128 F.3d 682, 685 (8th Cir. 1997), and Walker v. AT&T Technologies, 995 F.2d 846, 849 (8th Cir. 1993). Thus, SWB argues the district court abused its discretion in denying to charge the jury with Instruction 20.

In Stemmons v. Missouri Dep't of Corrections, 82 F.3d 817 (8th Cir. 1996), a Title VII race discrimination case, the defendant appealed, in part, the lower court's failure to give a business judgment instruction. This court affirmed the decision, explaining that because the plaintiff had presented a good deal of rebuttal evidence that "very strongly suggested" a discriminatory motive on the part of the defendant, the absence of the business judgment instruction was not prejudicial to the defendant. Stemmons, 82 F.3d at 821. On the other hand, this court in Scamardo concluded that the district court's failure to give such an instruction amounted to reversible error. In that case, the business judgment instruction went to the heart of the defense, and the

-10-

evidence presented by the plaintiff did not rise to the level of persuasiveness of that in <u>Stemmons</u>.  <u>Scamardo</u>, 1999 WL 642954, at \*3.

We find this case more closely aligned with the facts in <u>Scamardo</u>.  SWB provided the fact finders with adequate evidence of business necessity.  Belk's counsel ably cross-examined Dr. Gephardt and provided testimony from amputees who could not have passed the PPT but successfully performed work similar to that of a CST for another employer.  Belk also testified that the director of personnel informed him before he even took the PPT that he would not be given the position, but SWB explained that decision was based on Belk's admission that he was unable to climb poles, and the ability to climb poles is an essential function of the position.[9]  While it is the province of the fact finder to assess the credibility of the overall testimony, Fed. R. Civ. P. 52(a), <u>Estate of Davis v. Delo</u>, 115 F.3d 1388, 1394 (8th Cir. 1997), SWB was entitled to an instruction on business necessity so that the jury could appreciate the value and purpose of Dr. Gephardt's explanations.  The court's failure to instruct the jury was error.

We also have determined, as the case law requires us to do, that SWB was prejudiced by the court's failure to give a business necessity instruction.  <u>See</u> <u>Walker</u>, 995 F.2d at 850 (stating that before a court can reverse for inadequate jury instructions, it must find that the party seeking reversal was prejudiced).  The court's error prejudiced SWB because the jury was not given the opportunity to properly weigh Dr. Gephardt's testimony against Belk's proffered evidence.  Without the appropriate

[9]The parties disagree as to the substance of the conversation between Belk and Director of Personnel, John Dacus.  Belk claims he said he could not climb poles <u>with hooks</u>, while SWB avers that Belk said he could not climb poles at all.  While this dispute would be important if we were dealing with the denial of the motion for judgment as a matter of law, it is not critical to our analysis of the business judgment instruction issue.

instruction, it is not so apparent that the jury "clearly rejected" SWB's business necessity defense.

It must be noted that we do not hold that SWB necessarily is entitled to the exact wording of its proffered instruction. As we explained in <u>Walker</u>, the trial court's obligation to give an appropriate instruction does not include an obligation to adopt the exact language suggested to it. <u>Id.</u> The trial court is simply required to adequately inform the jury of the substantive law regarding the business necessity defense.

## III. CONCLUSION

Although we find that the failure to give the instruction requires us to vacate the district court's grant of injunctive relief, as well as the award of attorney's fees, SWB's success on this appeal may indeed be short lived. The remand necessarily provides Belk with another opportunity to win outright on his discrimination claim. As manifested by the earlier jury verdict, Belk has produced sufficient evidence under the ADA to warrant a jury to return a favorable verdict for him. For the foregoing reasons, we vacate the judgment and remand for a new trial.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.