# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-3562

_____

| | | |
|---|---|---|
| Marion R. Stafne, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the District |
| | * | of Minnesota. |
| Unicare Homes, d/b/a | * | |
| Trevilla of New Brighton, Inc., | * | |
| | * | |
| Appellee. | * | |
| | * | |
| -------------------------------------- | * | |
| | * | |
| Equal Employment Opportunity | * | |
| Commission, | * | |
| | * | |
| Amicus on Behalf of Appellant. | * | |

_____

Submitted: November 17, 2000

Filed: October 1, 2001

_____

Before LOKEN, LAY, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

Trevilla of New Brighton, Inc., fired Marion Stafne after she developed rheumatoid arthritis, a condition that greatly limited her ability to walk and perform the

duties of her job as a nurse. Ms. Stafne subsequently brought a lawsuit against Trevilla under the Americans with Disabilities Act ("ADA"), *see* 42 U.S.C. §§ 12101-12213, and the Minnesota Human Rights Act, *see* Minn. Stat. Ann. §§ 363.01-363.20, claiming that Trevilla discriminated against her because of her disability and retaliated against her because she filed a complaint with the Equal Employment Opportunity Commission ("EEOC") while she was still employed. Following a two-week trial, a jury reached a verdict in favor of Trevilla.

Ms. Stafne argues on appeal that the district court[1] erred in several of its rulings during the course of her trial. She maintains, in particular, that the district court should have given certain jury instructions that she proposed and should not have excluded certain evidence that tended to support her retaliation case. We affirm the judgment of the district court.

I.

Ms. Stafne first contends that the district court erred in rejecting her proposed jury instructions regarding Trevilla's duty to engage in an interactive process to determine whether Trevilla could have provided her with an accommodation that would have permitted her to keep her job. *See generally Fjellestad v. Pizza Hut of America, Inc.*, 188 F.3d 944, 952 (8th Cir. 1999). She insists that her proposed instructions were critical to the theory of her case because they would have allowed the jury to find that Trevilla's failure to engage in an interactive process constituted bad faith.

We observe that our review of Ms. Stafne's argument is made more difficult by her failure to explain how the matter is related to her claim that Trevilla discriminated against her on the basis of her disability. Ms. Stafne never states precisely why it was important for her to convince to the jury that Trevilla acted in bad faith. The district

_____

[1]The Honorable John R. Tunheim, United States District Judge for the District of Minnesota.

court apparently faced the same difficulty in understanding her argument; it rejected her request for jury instructions concerning an interactive process because it felt that they would be "unnecessary" and "floating alone, unmoored to any of the issues that the jury had to resolve."

We think it important to emphasize that Ms. Stafne does not maintain that Trevilla would have discovered an accommodation that would have allowed her to do her job if only it had discussed matters with her further. The only accommodation that Ms. Stafne suggested was allowing her to use a motorized cart called an Amigo, and it is hard to see on the record before us how more interaction between her and Trevilla would have made any difference in this regard. Ms. Stafne, moreover, does not now claim that there was some other way in which Trevilla could have accommodated her. Previous cases of ours have emphasized that it is the plaintiff's burden in this kind of case to prove that there was an accommodation that would have allowed him or her to perform the essential functions of his or her job, *see*, *e.g.*, *Cannice v. Norwest Bank Iowa N.A.*, 189 F.3d 723, 727-28 (8th Cir. 1999), *cert. denied*, 529 U.S. 1019 (2000), and, as we shall demonstrate, Ms. Stafne failed to do so.

To establish a submissible case of discrimination under the ADA, Ms. Stafne had to produce evidence that would allow a jury to find, among other things, that she was qualified to perform the essential functions of her job with or without reasonable accommodations. *See Cravens v. Blue Cross & Blue Shield of Kansas City*, 214 F.3d 1011, 1016 (8th Cir. 2000). As a nurse at Trevilla's extended care facility, Ms. Stafne had many responsibilities that required significant amounts of walking. For example, with respect to her dining room duties, she had to walk from table to table during breakfast and lunch for three hours every day, serving meals to the facility's residents. Ms. Stafne was also in charge of pushing wheelchair-bound residents to their proper seating locations in the dining room and had to perform the Heimlich maneuver if any of the residents should require it. Because these duties were essential functions of

Ms. Stafne's job, she had the burden to prove that, with reasonable accommodations, she could have performed them notwithstanding her disability.

Ms. Stafne, however, failed to make a submissible case on this issue. Indeed, all of the evidence at trial tended to show that Ms. Stafne would not have been able to push wheelchairs or assist the residents in their dining even if Trevilla had allowed her to use an Amigo, the accommodation that she requested and was denied. Trevilla's vocational expert testified that it was impossible for Ms. Stafne to ride in an Amigo and push wheelchair-bound residents at the same time. Ms. Stafne's own doctors, moreover, stated that she needed a "totally sedentary sit-down job" and was qualified for "seated work only." Given the evidence as presented, there can be no genuine factual dispute that Ms. Stafne would have been unable to perform her duties in the dining room even if she had been allowed the use of an Amigo. *See Browning v. Liberty Mut. Ins. Co.*, 178 F.3d 1043, 1048 (8th Cir. 1999).

Ms. Stafne responds to the assertion that she failed in her proof only by insisting that pushing wheelchairs was not a part of her job duties. We find this argument impossible to credit, however, since Ms. Stafne herself admitted several times in her testimony at trial that she often had to push and lift wheelchair-bound residents in the dining room. She also stated that she exacerbated an injury resulting from her disability while she was pushing a particularly heavy resident in a large wheelchair. It is incontrovertible therefore that pushing wheelchair-bound residents was among the essential functions of Ms. Stafne's job, despite her contention on appeal that it was not. *See Lloyd v. Hardin County, Iowa*, 207 F.3d 1080, 1084 (8th Cir. 2000).

Because Ms. Stafne did not make out a jury question on an essential element of her case, we conclude that any errors in the district court's jury instructions with respect to the interactive process were necessarily harmless. *See Burlison v. Warner-Lambert Co.*, 842 F.2d 991, 992-93 (8th Cir. 1988).

We also hold that the record in this case could not in any event have supported a finding that Trevilla failed to engage in an interactive process with her. The proof showed that Ms. Stafne and Trevilla had numerous discussions concerning her proposed use of an Amigo for work. In particular, Trevilla met with Ms. Stafne and her vocational rehabilitation counselor to investigate whether an Amigo could be used in Trevilla's dining room area. It does not seem to us, therefore, that there is sufficient evidence in this case to find that Trevilla did not act in good faith in attempting to provide Ms. Stafne with a reasonable accommodation. *See Treanor v. MCI Telecomm. Corp.*, 200 F.3d 570, 575 (8th Cir. 2000).

Ms. Stafne also maintains that the district court erred when it instructed the jury that she had the burden to prove that her disability did not make her a direct threat to anyone's safety at her work. She argues that the district court misallocated the burden because the issue of direct threat was an affirmative defense raised by Trevilla; thus, the argument runs, Trevilla should have been the party obligated to prove that she was a danger to others. We need not address this argument, however, because, as we have explained, Ms. Stafne's failure to present a submissible case renders harmless any errors in the jury instructions.

II.

To prove her retaliation claim, Ms. Stafne had to establish that she engaged in a statutorily protected activity, that her employer took an adverse action against her, and that there was a causal link between the two. *See Amir v. St. Louis Univ.*, 184 F.3d 1017, 1025 (8th Cir. 1999). Ms. Stafne contended below that Trevilla fired her because she filed a charge with the EEOC complaining about Trevilla's unwillingness to allow her to use an Amigo.

With regard to her retaliation claim, Ms. Stafne argues that the district court should have allowed the jury to hear a message that her supervisor left on her answering machine on the day that she was terminated, a message that stated, in part,

"I understand we are going into a lawsuit so I guess this is where it stands." When Trevilla offered to stipulate that it had notice of Ms. Stafne's EEOC complaint before it terminated her, the district court excluded the statement both as irrelevant and as unfairly prejudicial under Fed. R. Evid. 403.

We review a district court's exclusion of evidence because of its unfairly prejudicial effect for a "clear abuse of discretion," *see Stephens v. Rheem Mfg. Co.*, 220 F.3d 882, 885 (8th Cir. 2000), and we see no abuse of discretion here. We think, moreover, that any error was harmless because the supervisor who left the message testified that she knew of Ms. Stafne's EEOC complaint before Ms. Stafne was terminated, so the essential probative force of the statement was before the jury.

### III.

For the reasons indicated, we affirm the judgment of the district court.

The motion to supplement the Appendix is granted.

LAY, Circuit Judge, dissenting.

I respectfully dissent.

This is a suit brought under the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101-12213, and the Minnesota Human Rights Act, Minn. Stat. Ann. §§ 363.01-363.20. The suit claims the nursing facility at which the plaintiff worked as a nurse discriminated against her because of her disability. The district court instructed the jury at length and after a two-week trial, the jury reached a verdict in favor of the defendant. In denying post-trial motions, the district court affirmed the jury verdict, believing there was sufficient evidence for the jury to side with either party. The district court agreed that plaintiff "presented a significant amount of evidence in support of her claim." Mem. Op. at 12 (Aug. 12, 1999). The district court further

stated, however, that the defendant presented a substantial amount of evidence in its favor, conceding it was a close case. On that basis, the district court held that the plaintiff's post-trial motions for judgment as a matter of law under Federal Rule of Civil Procedure 50(b), or in the alternative for a new trial under Federal Rule of Civil Procedure 59(a), should be denied.

Although the majority opinion affirms the judgment of the district court, it does so on a totally different basis. It holds that the district court should have dismissed plaintiff's case because she did not produce sufficient evidence to submit the case to the jury.

I strongly disagree and for reasons to be explained, I would reverse the district court's ruling and remand the case for a new trial.

In light of the record, the majority's conclusion is difficult to understand. Of course, the conclusion reached obviates the need to pass upon the erroneous jury instructions. Such a holding avoids a remand and retrial, thereby serving judicial efficiency. However, judicial efficiency runs a distant second to judicial fairness.

The majority opinion holds that Ms. Stafne failed to produce evidence that would allow a jury to find that she was qualified to perform the essential functions of her job with or without reasonable accommodation. The majority believes that Ms. Stafne was "in charge" of pushing wheelchair-bound residents to their proper seating locations in the dining room. The majority opinion reasons that since this was one of the essential functions of her job, she must prove, notwithstanding her disability, that she was qualified to perform this duty with or without reasonable accommodation. The majority opinion goes on to say that *all of the evidence* at trial tended to show that Ms. Stafne would not have been able to push wheelchairs even if she had been allowed to use the Amigo.

The majority rules on this issue as a matter of law, but the record is clear that pushing wheelchairs was not an essential function of her job. The majority steps into the role of the fact finder in holding, as a matter of law, that pushing residents in wheelchairs was an essential function of Ms. Stafne's job simply because she admitted she had done it occasionally in the past.

This mischaracterization of the record overlooks the *undisputed* evidence that pushing wheelchairs was the essential and the *primary* function of another group of employees specifically hired for this purpose: Transport Aides. Tr. at 566. The district court, in discussing the evidence as a whole, did not find that pushing wheelchairs was an essential function of her job. It did not because the record is directly to the contrary. The record is undisputed that at mealtime, residents who use wheelchairs were moved by the transport aides in and out of the dining room. Trevilla's job description for Ms. Stafne's does not list pushing wheelchairs or transporting residents in wheelchairs.[2] The majority's holding that pushing residents

---

[2]Trevilla's job description is as follows:

Job Duties:

  1. Committees
       A. Aliance of Hospital and Long Term Care Providers - Quarterly meeting
             1. Sub-Committee - Image
       B. Circle Committee Meeting - Unicare monthly
  2. Chairman of the Marketing Committee
       A. Chair Meeting
       B. Compute Staff Marketing Log
       C. Letters to M.D.'s every month - Appreciation
       D. Annual Marketing plan for Unicare
  3. Shoreview Community Center
       A. B/P Monthly
       B. Senior Advisory Committee Meeting - Monthly
  4. Golden Pond

in wheelchairs was an essential function of Ms. Stafne's job because she had occasionally assisted the transport aides simply does not follow.[3]  *See Milton v. Scrivner, Inc.*, 53 F.3d 1118, 1124 (10th Cir. 1995) ("The initial inquiry in determining whether a job requisite is essential is whether an employer actually requires all employees in the particular position to perform the allegedly essential function.").  The evidence is undisputed that no one, including the employer, considered "pushing wheelchairs" an *essential* function of her job.  The majority's conclusion is directly contrary to 29 C.F.R.  § 1630.2(n)(1).  Under this section "[t]he term *essential functions* means the fundamental job duties of the employment position the individual with a disability holds or desires."  Relevant to our discussion, the regulation continues and states "'essential functions' *does not include* the marginal functions of the position." (emphasis added).  For the majority to now rule, as a matter of law, that Ms. Stafne's occasional assistance to the transport aides made that work essential to her job is a misinterpretation of the law and the facts of the case.  This task was specially delegated to the transport aides and Ms. Stafne's job description did not list it as one of her duties.  One might argue, at the very least, this is a question of fact, but the

     A.  B/P Monthly
5.  Dining room Supervisor
     A.  Breakfast and Lunch
     B.  Arrange seating
6.  Incident Reports:
     A.  Nursing 24 - hour follow-up
     B.  Quarterly stats
7.  Infection Control:
     A.  Checking on station - Information Control Logs
8.  Chart Audits
9.  Room Check Rounds
10.  Other Duties as assigned.

[3]The majority's reasoning is akin to saying a food server at a hospital, who occasionally washes out a dish, has washing dishes as an essential function of her job.

overall record strongly suggests it was not essential she do the work a totally different group of employees was hired to do.

The majority next finds that it was Ms. Stafne's job to assist residents in the dining room. This is true. However, Ms. Stafne introduced evidence she could perform those tasks. The majority points out that it would be impossible for Ms. Stafne to ride an Amigo and push wheelchair-bound residents in the dining room at the same time. This sounds very logical. However, Ms. Stafne never claimed that she desired to use an Amigo in the dining room to assist the residents. Notwithstanding the record, the majority concludes that "[g]iven the evidence as presented, there can be no genuine factual dispute that Ms. Stafne would have been unable to perform her duties in the dining room even if she had been allowed the use of an Amigo." This observation completely misconstrues the record. Ms. Stafne, as well as James Cronick, a job placement counselor with the Minnesota Department of Economic Security (MDES), and Bonnie Malloy, vocational rehabilitation counselor from MDES, requested Trevilla to accommodate Ms. Stafne by allowing her to use the Amigo to travel from "point A to point B." Once she reached her destination, Ms. Stafne could get off the Amigo, park it, and perform her duties. The majority overlooks the actual evidence as to how the use of the Amigo could otherwise make her walking assignments in the dining room such that it would lessen the stress caused by her rheumatoid arthritis. Dr. Gulli testified: "My goal with prescribing the Amigo was to reduce the amount of walking that Ms. Stafne was doing to the point below the threshold of her causing these types of injuries such as stress fractures." Dr. Gulli further stated that once she arrived on an Amigo to where she wanted to go

> that her walking requirements were relatively light and I felt that they were acceptable. And so I wanted her to use the cart to travel the longer distances so that she could save her energy and walking ability for the shorter distances that were required for her to actually do her job.

-10-

The evidence was that the hallways were wide and the Amigo could be easily parked in the hallways, the same as wheelchairs, laundry, and cleaning carts. Trevilla first told her that the fire marshal would not permit the Amigo. The evidence showed, however, that Trevilla's people had never spoken with the fire marshal. Bonnie Malloy subsequently confirmed with the fire marshal that the electric car was permissible at Trevilla.

Trevilla urged at trial that Ms. Stafne might not be able to perform the Heimlich Maneuver on any of the residents if they required it. Once again the majority misinterprets the evidence on this issue by simply concluding that Ms. Stafne failed to make a submissible case on this issue. Yet, the record contains no evidence whatsoever that Ms. Stafne could not perform the Heimlich Maneuver. She only did this on rare occasions. The only evidence is that Ms. Stafne testified she had done this on occasion and had performed it successfully.[4]

The reason this case requires a new trial is because the jurors were given erroneous instructions concerning the burden of proof on a basic issue. There is no question that under the ADA an employer may avoid liability for discrimination if it can prove that the claimant is not qualified under one of the affirmative defenses as defined in the statute. 42 U.S.C. § 12113(a)-(b). Trevilla contended in its pleadings, as well as at trial, that Ms. Stafne was unqualified for her job because her rheumatoid arthritis made her a direct threat to nursing home residents. Under the ADA, direct threat is

---

[4]I find similar problems with the majority's discussion on the accommodation process. The majority opinion overlooks this court's discussion relating to bad faith and the interactive process as set out in *Fjellestad v. Pizza Hut of America, Inc.*, 188 F.3d 944, 952-54 (8th Cir. 1999). However, there is nothing to be gained by going into each detail of the majority's opinion.

-11-

listed as a defense to liability.[5]  As such, the employer in posing an affirmative defense must carry the burden of proof that the individual poses a direct threat to the safety of those in the workplace.  It is fundamental, basic procedural law under the Federal Rules of Civil Procedure that any affirmative defense must be pled under Rule 8(c).  Trevilla did just that; yet, the district court instructed the jury that Stafne had the burden of proof to show that she did not constitute a threat to others.

As the Equal Employment Opportunity Commission (EEOC) points out, this court in *Belk v. Southwestern Bell Telephone Co.*, 194 F.3d 946 (8th Cir. 1999), in discussing another defense under the same section of the ADA, held that these were affirmative defenses and the burden of proof lies upon the employer.  *Id.* at 951-53.[6]  Further, the House Judiciary Report says that an otherwise qualified applicant for a job "cannot be disqualified on the basis of a physical or mental condition unless the *employer* can demonstrate the applicant's disability poses a direct threat to others in the workplace."  H.R. Rep. No. 101-485(III), at 46 (1990), *reprinted in* 1990 U.S.C.C.A.N. 445, 469 (emphasis added).

Several circuits have referred to the "defense" of direct threat.  *See Hamlin v. Charter Township of Flint*, 165 F.3d 426, 431 (6th Cir. 1999) ("As a defense to [plaintiff's] claims, [defendant] argued that [plaintiff] posed a direct threat . . . ."); *Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1247 (9th Cir. 1999) ("Because this

---

[5]42 U.S.C. § 12113(a) allows as a defense the application of "qualification standards . . . that screen out . . . an individual with a disability" if such a standard is "job-related and consistent with business necessity, and such performance cannot be accomplished by reasonable accommodation . . . ."  A requirement that an employee "not pose a direct threat to the health or safety of other individuals in the workplace" is an acceptable qualification standard.  42 U.S.C. § 12113(b).

[6]The EEOC has filed an amicus brief in this court arguing that the trial court erred in giving the burden of proof instruction.

is an affirmative defense, [defendant] bears the burden of proving that [plaintiff] is a direct threat."); *EEOC v. AIC Sec. Investigation, Ltd.*, 55 F.3d 1276, 1283 (7th Cir. 1995) ("The first rejected instruction involved [defendant's] 'direct threat' defense.").[7]

Some circuits have held, at least in a limited set of circumstances, that the plaintiff has the burden of showing that he or she is not a threat to others. These courts reason that the plaintiff cannot prove that she can preform the essential functions of her job if she is a direct threat to others. *See EEOC v. Amego, Inc.*, 110 F.3d 135, 144 (1st Cir. 1997) ("Where [plaintiff's] essential job functions necessarily implicate the safety of others, plaintiff must demonstrate that she can preform those functions in a way that does not endanger others. There may be other cases under Title I where the issue of direct threat is not tied to the issue of essential job functions but is purely a matter of defense, on which the defendant would bear the burden."); *Moses v. American Nonwovens, Inc.*, 97 F.3d 446, 447 (11th Cir. 1996) ("The employee retains at all times the burden of persuading the jury either that he was not a direct threat or that reasonable accommodations were available."); *Borgialli v. Thunder Basin Coal Co.*, 235 F.3d 1284, 1295 (10th Cir. 2000) ("Plaintiff was not a 'qualified person' to work in a position as a blaster because the defendants rightly considered that he was a direct threat to others in the work place.").

Even if we were to accept the view of the First Circuit, the present case is not one that places the burden on Ms. Stafne to show that she was not a direct threat. The *Amego* court makes it clear that the only time the plaintiff has the burden of showing she is not a direct threat is when plaintiff cannot preform the essential functions of her job without endangering others. *See Amego*, 110 F.3d at 144; *Borgialli*, 235 F.3d at

---

[7]*See also Rizzo v. Children's World Learning Centers, Inc.*, 213 F.3d 209, 213 (5th Cir. 2000) (en banc) (deciding, under plain error standard of review, that the district court did not commit obvious error by giving the defendant the burden of proving plaintiff was a direct threat.).

1292.  There is simply no evidence in the record that shows that Ms. Stafne's disability created the possibility that she would injure someone during the performance of her duties.  Absent any indication that Ms. Stafne's attempts to perform her duties might threaten the patients, indeed absent any indication that Ms. Stafne was a threat to anyone at all, the district court's direct threat instruction prejudiced Ms. Stafne and demands a new trial.

It is difficult for me to write this dissent because of the profound respect I have for my two learned colleagues.  However, unless appellate courts are willing to adhere to the actual evidence adduced at the trial, we abdicate our role as appellate judges for that of finders of fact.  We are bound by the record adduced at trial.  We should not attempt to obviate the actual record by our own interpretative sense of right and wrong.

It seems to me, once the plaintiff did put forth a submissible case and the defendant submitted its defense, it should be left to the jury, as the trial court reasoned, to assess the credibility of the evidence and to follow the court's instructions by reason of the law given by the court.[8]

---

[8]The trial court is in the best position to judge the sufficiency of the evidence. The trial judge hears the witnesses and observes their demeanor and, although the trial judge does not pass on the credibility of witnesses, when a jury is present, the judge is in a far better position to weigh the evidence in deciding whether to submit a case to a jury.  All judges are mandated by the Seventh Amendment to give overall deference to a jury verdict.  Our entire system of justice, as recognized in the Seventh Amendment, lies in this nation's mandate to allow issues of fact be tried by the composite diversified mix of our citizenry.  Appellate courts should seldom vacate jury verdicts; this should occur

> *[o]nly when there is a complete absence of probative facts to support the conclusion reached does a reversible error appear.*  But where, as here, there is an evidentiary basis for the jury's verdict, the jury is free to discard or disbelieve whatever facts are inconsistent with its conclusion.

I believe that since there was no evidence whatsoever that Ms. Stafne's attempts to complete her job threatened anyone, the district court erred in giving the jury a direct threat instruction. At best, defendant raised vague allegations of a threat. Even under the logic of *Amego*, absent any evidence that Ms. Stafne's performance of her duties could conceivably threaten someone she worked with, the district court should have placed the burden on the defendant to show that she was a direct threat. If ever an instruction is prejudicial, it is where the trial court erroneously instructs the jury on the burden of proof.

I would grant Ms. Stafne a new trial.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

------

> And the appellate court's function is exhausted when that evidentiary basis becomes apparent, it being immaterial that the court might draw a contrary inference or feel that another conclusion is more reasonable.

*Lavender v. Kurn*, 327 U.S. 645, 653 (1946) (emphasis added). "We do not know what our answer would have been if we had been sitting on the jury, but that is not important. There was conflicting evidence on this issue, and it could have gone either way. Making decisions of this kind is exactly what juries are for." *Forbes v. Arkansas Educational Television Comm'n*, 93 F.3d 497, 501 (8th Cir. 1996). Such second guessing of the fact finder should rarely occur. It should not have occurred here. There was clearly a conflict of evidence which only a jury should have decided. If the majority had given deference to the jury verdict, then the majority would be faced with whether the trial court prejudicially instructed the jury on the law of the case.

-15-